Lee Brett,
17790, Coshocton Rd
Mount Vernon
Ohio 43050
702-467-4817
Defendant in pro per



United States District Court
Central District of California

------------------------------------
LFP IP, LLC,                )         Case No: 2:16-CV-00166
       Plaintiff,   )
Lee Brett                   )         ANSWER
       Defendant    )
                            )         JURY TRIAL DEMAND
                            )         X - YES
------------------------------------

Defendant hereby answers Plaintiff's complaint as follows:

### ANSWER TO COMPLAINT

Defendant Lee Brett is the main owner and operates American Hustler Clothing and sell varies apparel items, but the website hasn't taken 1 Sale, as the defendant didn't set the pay pal up to accept payments until the trademark issue was resolved.

Defendant is a famous pool coach and player and regarded as a pool hustler.

Defendant denies each and every other allegation contained in paragraph 1.

Defendant denies each and every allegation contained in paragraph 2.

Deny for insufficient information, defendant hasn't sold any commerce in the state of California, due to not setting up payments on the website. Contained in paragraph 3.

Defendant is the main owner of Americanhustlerclothing.com, the rest of the information we deny for insufficient information contained in paragraph 4.

Defendant denies the allegations contained in paragraph 5, the defendant hasn't done any business in California or sell his products in California as the websites payment system wasn't set up, due to the trademark dispute.

Deny for insufficient information contained in paragraph 6.

True the Defendant used to live at 5751 Tuttles Grove blvd, Dublin, Ohio 43016, the defendant moved to 17790 Coshocton rd, Mount Vernon, Ohio 43050. True the defendant controls the website www.americanhustlerclothing.com the defendant part operates the website, and can only add or change the commerce, but doesn't operate the look of the website for information contained in paragraph 7.

Defendant is without knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in paragraph 8 and therefore denies them.

Defendant is without knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in paragraph 9 and therefore denies them.

Defendant is without knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in paragraph 10 and therefore denies them.

Defendant is without knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in paragraph 11 and therefore denies them.

Defendant is without knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in paragraph 12 and therefore denies them.

Defendant is without knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in paragraph 13 and therefore denies them.

Defendant is without knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in paragraph 14 and therefore denies them.

Defendant admits each and every allegation contained in paragraph 15 of the complaint.

Defendant is without knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in paragraph 16 and therefore denies them.

Defendant admits each and every allegation contained in paragraph 17 of the complaint.

Defendant admits each and every allegation contained in paragraph 18 of the complaint.

Defendant admits the newly designed website was launched in conjunction with our shirts being worn on the world series of poker final table on ESPN. To advertise the American Hustler branded apparel contained in paragraph 19 of the complaint.

Defendant denies the allegations contained in paragraph 20 the defendant hasn't sold any apparel from www.americanhustlerclothing.com as the websites payment system wasn't set up, due to the trademark dispute. The defendant denies that they refused to remove the hustler mark, as the defendant has their own mark called American Hustler with the star design. Defendant has the right to ask for the registration to be re-assessed or apply to the appeal board at the upsto and go through the full process, the mark overcame all problems except lingerie, we would amend our mark to not include Lingerie nor ever sell lingerie as a respect against the plaintiff.

Defendant denies each allegation contained in paragraph 21.

Defendant is without knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in paragraph 22 and therefore denies them.

Defendant is without knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in paragraph 23 and therefore denies them. Defendant denies each allegation contained in paragraph 24.

Defendant denies each allegation contained in paragraph 25.

Defendant denies each allegation contained in paragraph 26

.Defendant denies each allegation contained in paragraph 27.

Defendant is without knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in paragraph 28 and therefore denies them.

Defendant is without knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in paragraph 29 and therefore denies them.

Defendant is without knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in paragraph 30 and therefore denies them.

Defendant denies each allegation contained in paragraph 31.

Defendant denies each allegation contained in paragraph 32, defendants alleges it's clothing is of a higher quality than plaintiffs and is not derogatory in nature, as most of plaintiffs is of a sexual nature, and can no way be seen as the same.

Defendant denies each allegation contained in paragraph 33.

Defendant denies each allegation contained in paragraph 34.

Defendant denies each allegation contained in paragraph 35.

Defendant is without knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in paragraph 36 and therefore denies them.

Defendant is without knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in paragraph 37 and therefore denies them.

Defendant is without knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in paragraph 38 and therefore denies them.

Defendant denies each allegation contained in paragraph 39.

Defendant denies each allegation contained in paragraph 40.

Defendant denies each allegation contained in paragraph 41.

Defendant denies each allegation contained in paragraph 42.

Defendant is without knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in paragraph 43 and therefore denies them.

Defendant is without knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in paragraph 44 and therefore denies them.

Defendant denies each allegation contained in paragraph 45.

Defendant denies each allegation contained in paragraph 46.

Defendant is without knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in paragraph 47 and therefore denies them.

## AFFIRMATIVE DEFENSES

Defendant hereby asserts the following affirmative defenses:

### Affirmative defense 1

**Hustler for pool came before Flynt and his pornographic business.**

Hustler the movie was 1st shown in 1961 this was about a pool hustler. Hustler the porn company was started in 1972.

The term hustler in the pool industry became famous from the well-known 1961 American drama film The Hustler, starring Paul Newman and Jackie Gleason, which tells the story of a small-time pool hustler who attempts to break into the world of high-stakes betting in the pool industry and to beat the famous pool player Minnesota Fats.

For the following reasons, Applicant submits that there is unlikely to be confusion in the marketplace between the cited HUSTLER, HUSTLER HOLLYWOOD, and HUSTLER STORE marks, and the applied for AMERICAN HUSTLER and Design mark: Section 2(d) - Likelihood of Confusion Refusal According to dictionary.reference.com a hustler is "an enterprising person determined to succeed; go-getter"; "Slang. a person who employs fraudulent or unscrupulous methods to obtain money; swindler."; "Informal. an expert gambler or game player who seeks out challengers, especially unsuspecting amateur ones, in order to win money from them: He earned his living as a pool hustler",

A petition with 25,000 – 100,000 signatures can be done within the pool industry to protect the word for our use.

A survey can be done to prove that the word hustler, is associated to pool and not Flynt.

**Affirmative defense 2**

**What is a hustler? and the link to pool**

The Hustlers Methods Of Deception

Taken from the book Hustlers, beats, others. The structure of a gambling game determines what methods of deception, if any, may be used in it. In many games one can deceive one's opponent by various techniques of cheating. Pool and billiard games are so structured this method is virtually impossible. When two high betting hustlers agree to play each other there is often a race among poorer spectators to offer rack boy services because as previously noted, if one is engaged in such a session he can expect a good tip. I witnessed one 6 hour session between hustlers in which the winning hustler came out $800 ahead and tipped the rack boy $50.

It's pool-hustler origin is noted Vogeler, op. Cit., p. 347. It is recorded in none of the

slang sourcebooks (Mencken, Matthews, Berrey and Van Den Bark et al.) except Harold Wentworth and Stuart Berg Flexner, dictionary of American slang ( New York: T. Y. Crowell 1960), p 527. Wentworth and Flexner do not attempt to account for the phrase's origin. They claim it dates to around 1835, but this seems impossibly early. The only source they cite is its use as the title of a W. .C Fields movie.
Actually Fields used the phrase earlier in his Poppy (1936), where it is his exit line and the last line of the movie. Field's partially to "never give a sucker an even break" is thoroughly in keeping with Vogeler's account in keeping with the origin of the phrase: Fields was the son of a Philadelphia pool room owner, spent much of his boyhood in his Father's poolroom, was an excellent player and built his funniest vaudeville act around his pool playing skill.

**Hustling** is the deceptive act of disguising one's skill in a sport or game with the intent of luring someone of probably lesser skill into gambling (or gambling for higher than current stakes) with the hustler, as a form of both a confidence trick and match fixing. It is most commonly associated with, and originated in, pool (and to an extent other billiards-family games), but also can be performed with regard to other sports and gambling activities. Hustlers may also engage in "sharking"—distracting, disheartening, enraging, or even threatening their opponents—to throw them off. Hustlers are thus often called "pool sharks" *(compare "card shark")*. Professional and semi-pro hustlers sometimes work with a "stakehorse"—a person who provides the money for the hustler to bet with (and who may assist in the hustling)—in exchange for a substantial portion of all winnings. Another form of hustling (often engaged in by the same hustlers who use the skill-disguising technique) is challenging "marks" (swindle targets) to bet on trick shots that seem nearly impossible but at which the hustler is exceptionally skilled.

## Contents

- 1 Pool hustling techniques
- 2 In popular culture
- 3 Notable real-life hustlers
- 4 Notable books about and/or by hustlers
- 5 Notable films about hustlers and hustling
- 6 Notable fictional hustlers
- 7 References

Pool hustling techniques[edit]

Pool hustlers use deception and misdirection in order to win cash from inexperienced players (or skilled players inexperienced with the world of hustling). A skilled hustler

- will usually play with a low-quality "house" cue stick provided by the pool hall, or an unadorned but high-quality personal cue that looks like one, known as a "sneaky pete" (or, with the nascence of local competitive league play in recent years, may play with a flashy-looking but evidently low-end personal cue, to give the impression that the hustler is a beginning league player);
- will typically play a game or two for "fun" or for low bets (a beer or equivalent amount of cash, for example) in order to check out the opponent and give the impression that money can easily be won, often losing on purpose (known as "sandbagging" or "dumping") – with the intent of winning a much larger wager later against a predictably overconfident opponent;
- will pocket some difficult and impressive shots or make surprisingly secure safety shots (ones crucial for winning), while missing many simple ones, thus making early victories appear to be sheer luck (a variant being the theatrical almost-making of shots that inexperienced players may think of as crucial mistakes, but which really give away very little advantage);
- may pretend to be intoxicated, unintelligent, or otherwise impaired (that is, until it is time to run the table or make a game-winning shot).
- when betting on trick shots, may intentionally miss the first or several times and lose a small amount, then raise the bet to an amount well beyond the loss and succeed at the well-practiced feat.

Many of these ploys can easily be mistaken for the honest faults of a less-than-exceptional player. The engendered doubt and uncertainty is what allows hustling to succeed, with the "faults" being dropped when a significant amount of money is at stake.

In popular culture[edit]

Pool hustling is the subject of films such as *The Hustler* (1961) and *The Color of Money* (1986) (both adapted from earlier novels, *see "Books", below*), among other *(see "Films", below)*. In the 1972 Jim Croce song "You Don't Mess Around with Jim", the character Slim teaches a lesson to Big Jim about pool hustling. It was also the principal subject of episodes of various television programs, including *The Dick Van Dyke Show* episode "Hustling the Hustler" (season 2, episode 5, 1962), *Quantum Leap* episode "Pool Hall Blues" (sn. 2, ep. 18, 1990), *The Fresh Prince of Bel-Air* episode "Banks Shot" (sn. 1, ep. 22, 1991), *The Steve Harvey Show* episodes "Pool Sharks Git Bit" (sn. 1, ep. 12, 1996) followed up with "What You Won't Cue for Love" (sn. 3, ep. 6, 1998), and *Drake & Josh* episode "Pool Shark" (sn. 2, ep. 5, 2004). Main characters Dean and Sam Winchester are also pool hustlers, among other sources of income, in the TV series

*Supernatural* (various episodes, 2005–present).

Notable real-life hustlers[edit]

- Rudolf "Minnesota Fats" Wanderone, famous hustler and entertainer
- Chef Anton, trick shot artist and author of several hustling manuals
- Keith McCready, a legendary road player
- Billy "Cornbread Red" Burge, another legendary player, from Detroit
- Danny "Kid Delicious" Basavich, former hustler turned top-ranking professional
- Alvin Clarence "Titanic Thompson" Thomas, a gambler, golfer, and hustler, from Arkansas

Notable books about and/or by hustlers[edit]

- *The Hustler* (1959), a novel by Walter Tevis, ISBN 0-380-00860-2, ISBN 1-56849-044-5, ISBN 1-56025-473-4
- *The Color of Money* (1984), the sequel by Walter Tevis, ISBN 0-446-32353-5, ISBN 0-446-34419-2, ISBN 0-349-10150-7, ISBN 1-56849-689-3, ISBN 1-56025-485-8
- *McGoorty: A Billiard Hustler's Life*, also published as *McGoorty: A Pool Room Hustler* (1984/2003), nonfiction by Robert Byrne and Danny McGoorty, ISBN 0-8065-0925-2; ISBN 1-894963-12-1, ISBN 0-7679-1631-X
- *Playing off the Rail: A Pool Hustler's Journey* (1996), nonfiction by David McCumber, ISBN 0-679-42374-5, ISBN 0-517-30710-3, ISBN 0-380-72923-7
- *Hustler Days: Minnesota Fats, Wimpy Lassiter, Jersey Red, and America's Great Age of Pool* (2003), nonfiction by R.A. Dyer, ISBN 1-59228-104-4, ISBN 1-59228-646-1
- *Billy Phelan's Greatest Game* (1978), a novel by William J. Kennedy, ISBN 0-670-16667-7, ISBN 0-14-006340-4 (audio-book: ISBN 1-57815-187-2)
- *Cornbread Red: Pool's Greatest Money Player* (1995), nonfiction by Bob Henning, ISBN 1-887956-34-4
- *Confessions of a Pool Hustler* (2010), autobiography by Robert "Cotton" LeBlanc, ISBN 978-0-9823350-5-5
- *The Money Player: The Confessions of America's Greatest Table Tennis Champion and Hustler* (1974), autobiography by Marty Reisman, ISBN 0-688-00273-0

Notable films about hustlers and hustling[edit]

- *The Hustler* (1961)
- *The Color of Money* (1986)
- *Stickmen* (2001)
- *Poolhall Junkies* (2003)
- *Shooting Gallery* (2005)
- *Turn the River* (2007; unusual in that it features a woman hustler)

Notable fictional hustlers[edit]

- "Minnesota Fats" in *The Hustler* (played by Jackie Gleason in the film version) – the smooth character whose moniker Rudolf Wanderone *(above)* lifted after publication of Tevis's novel
- "Edward 'Fast Eddie' Felson" in *The Hustler* and *The Color of Money* (played by Paul Newman in the film versions)
- "Vincent (Vince) Lauria" in *The Color of Money* (played by Tom Cruise in the film version)
- "Grady Seasons", said to be "the best money player in the world", in *The Color of Money* (played by Keith McCready, *above*, in the film version)
- "Johnny Doyle" (played by Mars Callahan) and "Brad" (played by Ricky Schroder) in *Poolhall Junkies*.
- "'Cue Ball' Carl" (played by Ving Rhames) and "Jericho Hudson" (played by Freddie Prinze, Jr.) in *Shooting Gallery*
- "'Charlie 'Black Magic' Walters" (played by Robert "Rags" Woods & Scott Bakula) in the *Quantum Leap* Emmy award-winning episode "Pool Hall Blues"

## Affirmative defense 3

## Trademark no longer famous.

Trademark dilution – The hustler trademark is no longer a famous mark as it once was for the hustler pornographic magazine, even Flynt himself states this below.

In an interview last year, Flynt said publishing accounted for less than five percent of his revenue. Instead, a casino and its broadcast channels account for a substantial chunk of Hustler's revenues.
http://www.dailyherald.com/article/20140728/business/140728590/

Pornography publisher Larry Flynt is selling his original Hustler store on Sunset Boulevard in West Hollywood, California.

"We constantly review all of our businesses, and if a transaction makes sense strategically and financially, we will consider acting on it," Arthur Sando, a spokesman for Flynt Management Group LLC, said in an e-mail. The store is in escrow, he said.

The planned sale of the store, which sells products such as lingerie and sex toys, comes as traditional adult publishers struggle to compete with online providers. Playboy Enterprises Inc. is making the transition to a licensing business from a print company.

Hustler Magazine this month celebrated its 40th anniversary.

"I don't think Hustler is going to be around very much longer," with customers turning to the Internet instead, Flynt, 71, said in a Bloomberg Television interview that aired today. "It's making money now. As long as it makes money, I'll continue to publish, but we can see the handwriting on the wall."

Here is another example that the business is down scaling and in need of revenue. Flynt even talked about selling a % of the business to generate income.

hustlerclothing.com is a harmful site, it says on google if you access this it can harm your computer, hustler on Facebook was last updated 11 June 2013, Hustler magazine was last updated August 2013.

### Affirmative defense 4

### Defendants link to the pool hustler industry.

The defendant works in the pool industry and created the brand for the pool industry, below is evidence to prove who the defendant is and that the defendant does not ride off the hustler name to sell apparel. The word hustler describes the many millions of pool players worldwide and the word American was used to describe the product is American made, the star was for the defendant as he is recognized as a star in his industry and the person behind the brand. Hence American Hustler with the star behind the brand name.

The Applicant herein is one of the top pool instructors in the world. Applicant is the coach for the American Pool Player's Association, the largest amateur pool league in the world, with 300,000 members. Applicant has coached and advised the Hong Kong National Team and many of the top players in the world, including John Morra (the number one Canadian, and 6th in the world), Shane Van Boening (the top player in America and the 2nd best player in the world, Darren Appleton (world number one), Corey Deuel (former American number one), and many others. Indeed, 6 of the 10 players in the Mosconi Cup, the annual nine-ball pool tournament between Europe and the United States, have been taught by applicant.

Applicant is the author of the Secret of Pool DVD and book series which were number one in their category on Amazon.com when they were released. Further information concerning Applicant can be found at WWW.LEEBRETTPOOL.COM. Applicant's AMERICAN HUSTLER and Design clothing has also been feature on ESPN's World Series of Poker Final Table, seen by 90 million viewers worldwide.

## Affirmative defense 5

### High quality designer branded clothing image.

The high quality AMERICAN HUSTLER and Design branded clothing line is currently produced by a company which also makes clothing for major brands including Affliction and Ed Hardy. Applicant emphasizes that its clothing is "Made in America" and is of the highest quality. The defendants clothing is of a higher quality than Flynt's and the very best American made as confirmed by Jakprints of Cleveland, a $30 million apparel printing business.

The owner of the cited marks, LFP, IP, refers to Larry Flynt, the well-known creator of the sexually graphic Hustler adult magazine. Hustler was a competitor to the likes of Playboy, though considered much more vulgar. For instance, in 1974, Hustler published what were to be known as the first "pink-shots" or pictures of open vulvas.

Larry Flynt has fought many lawsuits concerning the intersection of pornography and free speech concerning obscenity. Flynt's life was captured in the 1996 film The People vs. Larry Flynt, starring Woody Harrelson. Third-Party Registrations While the public may be aware of Hustler magazine, there are also numerous other companies who have registered and used the name Hustler for products related to the goods at issue here – clothing.

Third-party registrations may be relevant to show that the mark or a portion of the mark is descriptive, suggestive, or so commonly used that the public will look to other elements to distinguish the source of the goods or services. See, e.g., AMF Inc. v. American Leisure Products, Inc., 474 F.2d 1403, 1406, 177 USPQ 268, 269-70 (C.C.P.A. 1973); Plus Products v. Star-Kist Foods, Inc., 220 USPQ 541, 544 (TTAB 1983). Properly used in this limited manner, third-party registrations are similar to dictionaries showing how language is generally used See, e.g., Specialty Brands, Inc. v. Coffee Bean Distributors, Inc., 748 F.2d 669, 675, 223 USPQ 1281, 1285-86 (Fed. Cir. 1984); Tektronix, Inc. v. Daktronics, Inc., 534 F.2d 915, 917, 189 USPQ 693, 694-95 (C.C.P.A. 1976); In re Melville Corp., 18 USPQ2d 1386, 1388 (TTAB 1991); In re Dayco Products-Eaglemotive Inc., 9 USPQ2d 1910, 1911 (TTAB 1988); In re J.M. Originals Inc., 6 USPQ2d 1393, 1394 (TTAB 1987); United Foods Inc. v. J.R. Simplot Co., 4 USPQ2d 1172, 1174 (TTAB 1987).

## Affirmative defense 6

### Co-existing trademarks and other hustler clothing.

HUSTLER Registration No.: 3740383 covering "Protective sports equipment for use in the game of hockey, namely, shoulder pads, arm pads, shin pads and pants; BALTIMORE HUSTLERS Registration 3716459 for athletic apparel, H BALTIMORE HUSTLERS Registration No.: 3716460 for athletic clothing; HUSTLER STATE Registration No.: 1934785 covering "clothing, namely T-shirts, sweatshirts, jackets, shorts, hats, socks, rugby's, jersey's, jeans."; ALL AMERICAN HUSTLER HUSTLTERS AMBITION: 24/7/365/DUSK TILL DAWN/RAIN HAIL SLEET SNOW STACKS & BUNDLES/BRAINS & MUSCLE CERTIFIED CERTIFIED HUSTLER 24-7-365 and Design Application No.: 86288261, covering "Hats; Shirts; T-shirts."; IS FOR HUSTLERS Registration Nos.: 3716459, 3716460 and Application No.: 85786140 which received a Notice of Allowance and cover all manner of clothing; and HUSTLERS UNITED H.U. Registration no.: 2893365 covering all manner of clothing.

Interestingly, there is also a HUSTLER Registration No.: 1825275 covering pool tables, which shows the direct connection between the word Hustler and the pool industry. Attached hereto are copies of these marks obtained from the USPTO website as composite Exhibit A. Raccioppi v. Apogee Inc., 47 USPQ2d 1368 (TTAB 1998); In re Smith & Mehaffey, 31 USPQ2d 1531, 1532 n. 3 (TTAB 1994); Weyerhaeuser Co. v. Katz, 24 USPQ2d 1230 (TTAB 1992); In re Hub Distributing, Inc., 218 USPQ 284 (TTAB 1983). See TMEP §710.03.

In addition, a search on a site such as www.ebay.com reveals an Adidas FULL TIME HUSTLER t-shirt, a Nike FULL TIME HUSTLER t-shirt, and a Nike HARDWOOD HUSTLER t-shirt, attached hereto as composite. A search on www.cafepress.com reveals numerous HUSTLER-formative marks.

Throughout the Internet there are numerous other companies selling HUSTER-formative clothing, including HANDSOMEHUSTLERCLOTHING.COM.

The forgoing examples point to the fact that if there are this many other companies coexisting in the marketplace using the Hustler name for clothing, Applicant's AMERICAN HUSTLER and Design, which is distinguishable from the cited marks, should also be able to coexist peacefully in the marketplace without a likelihood of confusion. Likelihood of Confusion Marks are compared in their entireties for similarities in appearance, sound, connotation, and commercial impression.

Stone Lion Capital Partners, LP v. Lion Capital LLP, 746 F.3d 1317, 1321, 110 USPQ2d 1157, 1160 (Fed. Cir. 2014) (quoting Palm Bay Imps., Inc. v. VeuveClicquot Ponsardin Maison Fondee En 1772, 396 F. 3d 1369, 1371, 73 USPQ2d 1689, 1691 (Fed. Cir. 2005)); TMEP §1207.01(b)-(b)(v). "Similarity in any one of these elements may be

sufficient to find the marks confusingly similar." In re Davia, 110 USPQ2d 1810, 1812 (TTAB 2014) (citing In re White Swan Ltd., 8 USPQ2d 1534, 1535 (TTAB 1988); In re 1st USA Realty Prof'ls, Inc., 84 USPQ2d 1581, 1586 (TTAB 2007)); TMEP §1207.01(b). In In re E. I. du Pont de Nemours & Co., 476 F.2d 1357, 177 USPQ 563 (C.C.P.A. 1973), the Court of Customs and Patent Appeals discussed the factors relevant to a determination of likelihood of confusion. In ex parte examination, the issue of likelihood of confusion typically revolves around the similarity or dissimilarity of the marks and the relatedness of the goods or services.

The other factors listed in du Pont may be considered only if relevant evidence is contained in the record. See In re Majestic Distilling Co., 315 F.3d 1311, 1315, 65 USPQ2d 1201, 1204 (Fed. Cir. 2003) ("Not all of the DuPont factors may be relevant or of equal weight in a given case, and 'any one of the factors may control a particular case,'" quoting In re Dixie Restaurants, Inc., 105 F.3d 1405, 1406-07, 41 USPQ2d 1531, 1533 (Fed. Cir. 1997)); In re National Novice Hockey League, Inc., 222 USPQ 638, 640 (TTAB 1984). In an ex parte case, the following factors are usually the most relevant:

The similarity or dissimilarity of the marks in their entireties as to appearance, sound, connotation and commercial impression. • The relatedness of the goods or services as described in an application or registration or in connection with which a prior mark is in use. • The similarity or dissimilarity of established, likely-to-continue trade channels. • The conditions under which and buyers to whom sales are made, i.e. "impulse" vs. careful, sophisticated purchasing. • The number and nature of similar marks in use on similar goods. • A valid consent agreement between the applicant and the owner of the previously registered mark.

When considering the similarity of the marks, "[a]ll relevant facts pertaining to the appearance and connotation must be considered." Recot, Inc. v. M.C. Becton, 214 F.3d 1322, 1329, 54 USPQ2d 1894, 1897 (Fed. Cir. 2000). In evaluating the similarities between marks, the emphasis must be on the recollection of the average purchaser who normally retains a general, rather than specific, impression of trademarks. Sealed Air Corp. v. Scott Paper Co., 190 USPQ 106, 108 (TTAB 1975).

The points of comparison for a word mark are appearance, sound, meaning, and commercial impression. Palm Bay Imports, Inc. v. Veuve Clicquot Ponsardin Maison Fondee en 1772, 396 F.3d 1369, 73 USPQ2d 1689, 1691 (Fed. Cir. 2005), citing In re E. I. du Pont de Nemours & Co., 476 F.2d 1357, 1361, 177 USPQ 563, 567 (C.C.P.A. 1973). Importantly here is whether the marks in their entireties convey significantly different commercial impressions, or (2) the matter common to the marks is not likely to be perceived by purchasers as distinguishing source because it is merely descriptive or diluted. See, e.g., Shen Manufacturing Co. v. Ritz Hotel Ltd., 393 F.3d 1238, 73 USPQ2d 1350 (Fed. Cir. 2004) (RITZ and THE RITZ KIDS create different commercial

impressions); In re Farm Fresh Catfish Co.,

231 USPQ 495 (TTAB 1986) (CATFISH BOBBERS (with "CATFISH" disclaimed) for fish held not likely to be confused with BOBBER for restaurant services); In re Shawnee Milling Co., 225 USPQ 747 (TTAB 1985) (GOLDEN CRUST for flour held not likely to be confused with ADOLPH'S GOLD'N CRUST and design (with "GOLD'N CRUST" disclaimed) for coating and seasoning for food items); In re S.D. Fabrics, Inc., 223 USPQ 54 (TTAB 1984) (DESIGNERS/FABRIC (stylized) for retail fabric store services held not likely to be confused with DAN RIVER DESIGNER FABRICS and design for textile fabrics).

Even marks that are identical in sound and/or appearance may create sufficiently different commercial impressions when applied to the respective parties' goods or services so that there is no likelihood of confusion. See, e.g., In re Sears, Roebuck and Co., 2 USPQ2d 1312 (TTAB 1987) (CROSS-OVER for bras held not likely to be confused with CROSSOVER for ladies' sportswear, the Board finding that the term was suggestive of the construction of applicant's bras, but was likely to be perceived by purchasers either as an entirely arbitrary designation or as being suggestive of sportswear that "crosses over" the line between informal and more formal wear when applied to ladies' sportswear);

In re British Bulldog, Ltd., 224 USPQ 854 (TTAB 1984) (PLAYERS for men's underwear held not likely to be confused with PLAYERS for shoes, the Board finding that the term PLAYERS implies a fit, style, color and durability adapted to outdoor activities when applied to shoes, but "implies something else, primarily indoors in nature" when applied to men's underwear); In re Sydel Lingerie Co., Inc., 197 USPQ 629 (TTAB 1977) (BOTTOMS UP for ladies' and children's underwear held not likely to be confused with BOTTOMS UP for men's clothing, the Board finding that the term connotes the drinking phrase "Drink Up" when applied to men's suits, coats and trousers, but does not have this connotation when applied to ladies' and children's underwear).

If the common element of two marks is "weak" in that it is generic, descriptive or highly suggestive of the named goods or services, consumers typically will be able to avoid confusion unless the overall combinations have other commonality. See, e.g., In re Bed & Breakfast Registry, 791 F.2d 157, 229 USPQ 818 (Fed. Cir. 1986) (BED & BREAKFAST REGISTRY for making lodging reservations for others in private homes held not likely to be confused with BED & BREAKFAST INTERNATIONAL for room booking agency services); The U.S. Shoe Corp. v. Chapman, 229 USPQ 74 (TTAB 1985) (COBBLER'S OUTLET for shoes held not likely to be confused with CALIFORNIA COBBLERS (stylized) for shoes); In re Istituto Sieroterapico E Vaccinogeno, Toscano "SCLAVO" S.p.A., 226 USPQ 1035 (TTAB 1985) (ASO QUANTUM (with "ASO" disclaimed) for diagnostic laboratory reagents held not likely

to be confused with QUANTUM I for laboratory instrument for analyzing body fluids). In re Electrolyte Laboratories Inc., 929 F.2d 645, 647, 16 USPQ2d 1239, 1240 (Fed. Cir. 1990) (K+ and design for dietary potassium supplement held not likely to be confused with K+EFF (stylized) for dietary potassium supplement).See alsoTMEP §1207.01(b)(ix).

With respect to the cited HUSTLERSTORE Registration No.: 4268341, the goods covered by this registration, namely "On-line retail store services featuring digital video discs, adult sexual stimulation aids, apparel, lingerie, hats, cosmetics, candles, perfumes, shave creams, novelty items, party games, playing cards, candies, jewelry, books, magazines, condoms, and lotions" are all of a sexual nature and are distinguishable from Applicant's AMERICAN HUSTLER and Design clothing line. Consumers searching for the cited marks products would be different from those viewing Applicant's products.

See Electronic Design & Sales Inc. v. Electronic Data Systems Corp., 21 USPQ2d 1388, 1392 (Fed. Cir. 1992), "sophisticated consumers may be expected to exercise greater care." Pignons S.A. de Mecanique de Precision v. Polaroid Corp., 212 USPQ 246, 252 (1st Cir. 1981); and "There is always less likelihood of confusion where goods are expensive and purchased after careful consideration." Astra Pharmaceuticals Prods., Inc. v.

Beckman Instruments, Inc., 220 USPQ 786, 790 (1st Cir. 1993). Applicant's high-quality made in America goods are not likely to be confused with the sex-related goods of the cited mark. Further those viewing Applicant's mark would not make their buying decision on "impulse", but rather after carefully considering the origin of the goods – i.e. the pool industry. Given the other HUSTLER-formative marks in the market, there would unlikely to be confusion. In re E.I. du Pont de Nemours & Co., 476 F.2d 1357, 177 USPQ 563 (C.C.P.A. 1973).

commercial impression between HUSTLERSTORE and AMERICAN HUSTLER and Design is also distinguishable. A consumer confronted with the two marks would clearly distinguish between the words contained in the marks and the star design in Applicant's AMERICAN HUSTLER and Design mark.

In this example the word Hustler is actually weak and consumers viewing Applicant's mark would view the mark as a whole without separating out the separate words. The connotation of AMERICAN HUSTLER is much different than merely HUSTLERSTORE. Add on the star design in Applicant's mark and there is unlikely to be confusion between the marks.

With respect to HUSTLER HOLLYWOOD Registration No.: 4312312, the same reasoning applies. The goods covered by the respective marks differ in that they are

sexual in nature. Applicant has no connection to the pornographic industry and will not expand into that field. Whereas the geographic description on the HUSTLER HOLLYWOOD mark should be considered merely descriptive, leaving only the word Hustler as the prominent characteristic of the mark.

Applicant's AMERICAN HUSTLER and Design has connotations other than merely geographic. The mark suggests that the goods are made in America, but also suggests a type of American individualism, though perhaps more on the darker side, particularly in reference to the pool industry. Those viewing AMERICAN HUSTLER and Design would imagine a character or type of individual, perhaps a pool player or other person doing what they can to get by financially. In this way, the marks are unlikely to be confused. Overall the marks are distinguishable phonetically, and in appearance, connotation, and commercial impression.

See In re Martin's Famous Pastry Shoppe, Inc., 748 F.2d 1565, 1566 (Fed. Cir. 1984) and Massey Junior College, Inc. v. Fashion Institute of Technology, 492 F.2d 1399, 181 USPQ 272 (C.C.P.A. 1974). With respect to the cited HUSTLER Registration No.: 2689852 the listed goods are the same. However, the marks differ in their appearance, connotation and commercial impression. Consumers viewing the HUSTLER mark on its own might make the connection between the pornographic Hustler magazine. In fact the consumer likely to view the HUSTLER mark on its own would be shopping for pornographic material. Further, assuming that the cited HUSTLER mark is still well-known or famous in its industry, fame is measured with regard to "the class of customers and potential customers of a product or service, and not the general public.

" Palm Bay Imports, at 396 F.3d 1375, 73 USPQ2d 1695. Their class of customers is those interested in sexual related products, while the Applicants class of customers is the pool industry. In contrast to the HUSTLER mark, those viewing the AMERICAN HUSTLER and Design mark would view the mark as a whole. The star in the middle of the mark gives a completely different commercial impression that merely the word HUSTLER, and again, the connotations of the marks when viewed side by side are completely different. Given that there are so many other HUSTLER-formative marks in the marketplace, Applicant's AMERICAN HUSTLER and Design mark should be able to coexist without confusion.

When determining likelihood of confusion, fame is measured with regard to "the class of customers and potential customers of a product or service, and not the general public." Palm Bay Imports, at 396 F.3d 1375, 73 USPQ2d 1695. Their class of customers is those interested in sexual related products, while the Applicants class of customers is the pool industry

## Counterclaims

Defendant states the following counterclaims against the plaintiff.

1. **Frivolous action -- Plaintiffs complaint is frivolous against the defendant and has been advanced without reasonable cause. Defendant has suffered damages as a result in an amount to be determined at trial.**

2. **Abusive legal process -- Defendant seeks punitive damages against the plaintiff for Bad faith conduct as a result of the plaintiffs intentions to steal the plaintiffs website and trademark for their own gains.**

3. **Defendant seeks loss of earnings due to plaintiffs wrongful conduct from October 2015 to the present time.**

4. **Defendant seeks reasonable attorney's fees, costs and punitive damages as a result of plaintiffs wrongful conduct.**

## Amendment Request for relief

1. **For dismissal of the Plaintiffs complaint, with prejudice.**
2. **Should dismissal not be granted, to allow the plaintiff to sell their American Hustler branded clothing and make a living while until a trial decides the outcome.**

## AMENDMENT RIGHTS

**BY WAY OF FURTHER ANSWER TO PLAINTIFFS COMPLAINT, Defendant specifically reserves the right to amend this pleading by adding affirmative defenses, counterclaims, cross-claims or by instituting third party actions as additional facts are obtained through future investigation and discovery.**

Dated Month Day, Year
25/5/2016

(Sign Here) By: Lee Brett
Defendant in Pro Per







PRIORITY MAIL

Expected Delivery Day: 05/28/2016

USPS TRACKING NUMBER
9505 5139 4541 6147 2240 94

U.S. POSTAGE PAID
MOUNT VERNON, OH
49050
MAY 26, 16
AMOUNT
$6.45
R2304M114733-08

FROM:
LEE BRETT
APT #1
17760 COSHOCTON RD
MOUNT VERNON
OHIO
43050

TO: UNITED STATES COURTHOUSE
312 NORTH SPRING ST
LOS ANGELES
CA
90012-4701

RECEIVED
CLERK, U.S. DISTRICT COURT
MAY 31 2016
CENTRAL DISTRICT OF CALIFORNIA
BY_____ DEPUTY

(FMO)

Label 228, July 2013
FOR DOMESTIC AND INTERNATIONAL USE

VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

PS00001000014
EP14F July 2013
OD: 12.5 x 9.5