1  JONATHAN W. BROWN, ESQ. (State Bar No. 223901)
2  LIPSITZ GREEN SCIME CAMBRIA LLP
   42 Delaware Avenue, Suite 120
3  Buffalo, New York 14202-3924
   (716) 849-1333
4  Facsimile No.: (716) 849-1315
5  jbrown@lglaw.com

6  MARK S. HOFFMAN, ESQ. (State Bar No. 108400)
7  MARK S. HOFFMAN, A PROFESSIONAL CORPORATION
   11845 W. Olympic Blvd., Suite 1000
8  Los Angeles, CA 90064
   Tel. (424) 248-6633
9  Fax: (424) 248-6677
   mark@markshoffmanlaw.com
10
11
12 Attorneys for Plaintiff LFP IP, LLC
13
14
15              **UNITED STATES DISTRICT COURT**
16
               **CENTRAL DISTRICT OF CALIFORNIA**
17

| | |
|---|---|
| **LFP IP, LLC,** | Case No.: 2:16-cv-00166-FMO-RAO |
| Plaintiff, | **JOINT BRIEF RE: SUMMARY JUDGMENT MOTIONS** |
| vs. | |
| **LEE KEITH BRETT**, | |
| Defendant. | |

---

**JOINT BRIEF RE: SUMMARY JUDGMENT**

1

Lee Keith Brett
17790 Coshocton Road
Mount Vernon, Ohio 43050
702-467-4817
*Pro Se Defendant*

**JOINT BRIEF RE: SUMMARY JUDGMENT**

2

# **TABLE OF CONTENTS**

I.    Plaintiff's Trademark Infringement Claim ............................................... 1

    A.    Plaintiff's Argument:  Plaintiff Should Be Granted Summary

        Judgment on its First Cause of Action for Infringement of a

        Registered Trademark (15 U.S.C. § 1114) ................................... 1

    1.  Plaintiff is the Owner of the HUSTLER® Marks ........................ 1

    2.  Defendant's Application and Use of "American Hustler" ........... 4

        a.  Defendant's Trademark Application was Rejected by

           the USPTO .............................................................................. 4

        b.  Defendant's Website and Sale of Infringing Apparel ............. 5

    3.  Defendant's "American Hustler" Mark Infringes the

        HUSTLER® Mark. ...................................................................... 5

        a.  The HUSTLER® Registrations Provide Conclusive Evidence

           of Ownership, Validity, and the Exclusive Right to Use the

           Mark. ...................................................................................... 5

        b.  Defendant's Mark is Likely to Be Confused with Plaintiff's

           Marks ...................................................................................... 7

---

**JOINT BRIEF RE: SUMMARY JUDGMENT**

i

B.      Defendant's Argument: ............................................................... 10

   1.  Defendant is the Owner of AMERICAN HUSTLER .................. 10

II.  False Designation of Origin Claim........................................................ 27

A.      Plaintiff's Argument:  Plaintiff Should Be Granted Summary

Judgment on its Third Cause of Action for False Designation of

Origin (15 U.S.C. § 1125(a))........................................................ 27

B.      Defendant's Argument: ............................................................... 28

III.  Anti-Cybersquatting Consumer Protection Action Claim...................... 29

A.      Plaintiff's Argument:  Plaintiff Should Be Granted Summary

Judgment on its ACPA Claim (15 U.S.C. § 1125 (d)(1)(A)). ..... 29

B.      Defendant's Argument: ............................................................... 32

IV.  Defendant's Motion:  LFP's hustler marks are NOT famous and widely

recognized by the general consuming public of the United States ......... 33

A.      Defendant's Argument: ............................................................... 33

B.      Plaintiff's Response:.................................................................... 36

V.  Defendant's Motion:  Plaintiff's hustler marks are NOT well-known

by the general consuming public of the United States............................ 36

---

**JOINT BRIEF RE: SUMMARY JUDGMENT**

ii

A.    Defendant's Argument:  ...................................................36

B.    Plaintiff's Response: ......................................................38

VI.  Defendant's motion to dismiss, hustler is a generic word......................39

A.    Defendant's Argument: Defendant Should Be Granted Summary

Judgment on its claim that HUSTLER is a generic word..............39

B.    Plaintiff's Argument in Response to Defendant's Motion

to Dismiss:...................................................................44

A.    The HUSTLER® Mark is Not Generic. ...........................44

B.    Defendant Has Not Pled his Claim that the Subject

Mark is Generic; this Issue Should Not be Heard. ............45

**JOINT BRIEF RE: SUMMARY JUDGMENT**

# TABLE OF AUTHORITIES

## *Cases*

*A.J. Canfield Co. v.Honickman*, 808 F.2d 291, 307 (3d Cir.1986)................... 43

*AMF Inc. v.American Leisure Products, Inc.*, 474 F.2d 1403, 1406,
    177 USPQ 268, 269-70(C.C.P.A. 1973 ....................................................... 16

*AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 341 (9th Cir. 1979)............... 7, 13

*AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 952
    (9th Cir. 2006)........................................................................................... 48

*Applied Info. Scis. Corp.*, 511 F.3d at 969-70 ................................................. 6

*ArcSoft, Inc. v. CyberLink Corp.*, 153 F. Supp. 3d 1057, 1065
    (N.D. Cal. Dec. 28, 15)......................................................................... 35, 38

*Astra Pharmaceuticals Prods., Inc. v. Beckman Instruments, Inc.*, 220
    USPQ 786, 790 (1st Cir. 1993) .................................................................. 25

*Bd. of Regents, Univ. of Tex.Sys. ex. rel. Univ. of Tex. at Austin v. KST
    Elec., Ltd.*, 550 F. Supp. 2d 657, 679 (W.D. Tex.  2008) ...................... 35, 38

*Brookfield Communications, Inc. v. West Coast Entertainment Corp.*,
    174 F.3d 1036, 1066 (9th Cir. 1999) .......................................................... 30

---

**JOINT BRIEF RE: SUMMARY JUDGMENT**

**iv**

*Bullard v. Wastequip Mfg. Co. LLC*, 2015 U.S. Dist. LEXIS 186456

    (C.D.Cal. Apr. 14, 2015) ........................................................ 47

*Car-Freshner Corp. v. S.C. Johnson & Son, Inc.*, 70 F.3d 267, 269

    (2d Cir. 1995) ........................................................ 19

*CELS Enters., Inc. v. Rock & Roll Religion, Inc.*, 2012 WL 3157150

    (9th Cir. Aug. 6, 2012) ........................................................ 13

*CES Publ'g Corp. v. St. Regis Publ'ns, Inc.*, 531 F.2d 11, 15 (2d Cir. 1975) ... 42

*Chem. v. New York Life Ins. Co.*, 168 F.3d 498 (9th Cir. 1999) ........................ 43

*Coleman v. Quaker Oats Co.*, 223 F.3d 1271, 1292 (9th Cir. 2000)................ 46

*Coach Services, Inc. v. Triumph Learning LLC*, 668 F.3d 1356

    (Fed. Cir. 2012) ........................................................ 36

*Cont'l Airlines, Inc.v. United Air Lines, Inc.*, 53 U.S.P.Q.2d1385

    (TTAB 1999)........................................................ 43

*Cosmetically Sealed Industries, Inc. v. Chesebrough-Pond's USA Co.*,

    125 F.3d at 30........................................................ 19

*DSPT Intern., Inc. V. Nahum*, 624 F.3d 1213, 1218-19 (9th Cir.2010) ........... 29

*E&J Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1290 (9th Cir. 1992) .. 25

**JOINT BRIEF RE: SUMMARY JUDGMENT**

*Electronic Design & Sales Inc. v. Electronic Data Systems Corp.*,
21 USPQ2d 1388,1392 (Fed. Cir. 1992).......................................... 25

*Electronic Design & Sales, Inc. v. Electronic Data Systems Corp.*,
954 F.2d 713 (Fed. Cir. 1992) ....................................................... 20

*Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1141 (9th Cir. 2002).......... 15

*Finger Furniture Co., Inc. v. Mattress Firm, Inc.*, 2005 WL 1606934,
*2-3 (S.D. Tex. 2005).................................................................... 42

*GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1206 (9th Cir. 2000) ...... 7

*Hasbro Inc. v. Clue Computing, Inc.*, 232 F.3d 1, 2 (1st Cir. 2000) ................. 20

*Hasbro Inc. v. Asus Computer International LLC et al.*, case number 2:11-cv-
10437, (C.D. Cal. Mar. 23, 2012) ................................................... 24

*Icebreaker Ltd. v. Gilmar S.p.A.*, November 26, 2012,No. 3:11-CV-00309-BR.
911 F. Supp.2d 1099 (2012) ......................................................... 26

*In re Adbox, Inc.*, 488 F.3d 836, 841 (9th Cir. 2007) ........................................ 46

*In re All Terrain Vehicle Litig.*, 771 F. Supp. 1057, 1062 (C.D. Cal. 1991)...... 43

*In re Bed & Breakfast Registry*, 791 F.2d 157, 229 USPQ 818
(Fed. Cir. 1986) ........................................................................... 17

---

**JOINT BRIEF RE: SUMMARY JUDGMENT**

*In re British Bulldog, Ltd.*, 224 USPQ 854 (TTAB 1984) ............................... 17

*In re E. I. du Pont de Nemours & Co.*, 476 F.2d 1357, 1361, 177 USPQ
    563, 567 (C.C.P.A. 1973) ............................................................. 15

*In re Farm Fresh Catfish Co.*, 231 USPQ 495 (TTAB 1986) ......................... 15

*In re Martin's Famous Pastry Shoppe, Inc.*, 748 F.2d 1565, 1566
    (Fed. Cir. 1984) ...................................................................... 25

*In re S.D. Fabrics, Inc.*, 223 USPQ 54 (TTAB 1984) ...................................... 16

*In re Sears, Roebuck and Co.*, 2 USPQ2d 1312 (TTAB 1987) ........................ 17

*In re Shawnee Milling Co.*, 225 USPQ 747 (TTAB 1985) ............................... 15

*In re Sydel Lingerie Co., Inc.*, 197 USPQ 629 (TTAB 1977) .......................... 17

*Interstellar Starship Services, Ltd. v. Epix, Inc.*, 304 F.3d 936, 944
    (9th Cir. 2002) ....................................................................... 20

*Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 634 (9th Cir. 2007) .............. 34, 37

*Johnson*, 975 F.2d at 609 .................................................................. 48

*Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9thCir. 2008) ...... 43

*Lopez v. G.A.T. Airline Ground Support, Inc.*, 2010 U.S. Dist. LEXIS
    73029 (S.D. Cal. Jul. 19, 2010) ................................................ 48

**JOINT BRIEF RE: SUMMARY JUDGMENT**

*Marshall*, 2012 WL 1079550..........................................................................16

*Massey Junior College, Inc. v. Fashion Institute of Technology*, 492 F.2d
    1399, 181 USPQ 272 (C.C.P.A. 1974)...........................................25

*Miller Brewing Co. v. G. Heileman Brewing Co.*, 561 F.2d 75, 79
    (7th Cir. 1977) ...................................................................................42

*Miller Brewing Co. v. Falstaff Brewing Corp.*, 655 F.2d 5, 8 (1st Cir. 1981) .. 42

*Navajo Nation v. U.S. Forest Service*, 535 F.3d 1058, 1080 (9th Cir. 2008)... 47

*Network Automation, Inc. v. Advanced Systems Concepts, Inc.*, 638 F.3d
    1137, 1149 (9th Cir. 2011) ...............................................................24

*Nissan Motor Co.*, 378 F.3d 1002, 1011 (9th Cir. 2004)..........................35, 38

*Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1394 (9th Cir. 1993) ........10

*Opticians Ass'n of Am. v. Independent Opticians of Am.*, 920 F.2d 187,
    195 (3d Cir. 1990)................................................................................7

*Palm Bay Imports, Inc. v. Veuve Clicquot Ponsardin MaisonFondee en
    1772*, 396 F.3d 1369, 73 USPQ2d 1689, 1691 (Fed. Cir. 2005).............15, 27

*Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 201 (1985)...........19

*Perfumebay.com Inc. v. EBAY, Inc.*, 506 F.3d 1165, 1174 (9th Cir. 2007) ..... 8

**JOINT BRIEF RE: SUMMARY JUDGMENT**

**viii**

*Perini Corp. v. Perini Constr.*, 915 F.2d 121, 127(4ᵗʰ Cir. 1990) ...................... 42

*Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 968
(9th Cir. 2006) ........................................................................ 46, 47

*Pignons S.A. de Mecanique de Precision v. Polaroid Corp.*, 212 USPQ
46, 252 (1st Cir. 1981) ................................................................ 25

*Pinterest, Inc. v. Pintrips, Inc.*, No. 13-cv-04608-HSG, 2015 WL
6167967, at *21 (N.D. Cal. Oct. 21, 2015) ................................... 35

*Plus Products v. Star-Kist Foods, Inc.*, 220 USPQ 541, 544(TTAB1983) ...... 16

*Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1124 (9th Cir. 2014) ..... 6, 13

*Recot, Inc. v. M.C. Becton*, 214 F.3d 1322, 1329, 54 USPQ2d 1894,
1897 (Fed. Cir. 2000) ................................................................. 15

*Reed v. Amoco Oil Co.*, 611 F. Supp. 9, 12 (M.D. Tenn. 1984) ........................ 43

*S & R Corp. v. Jiffy Lube Intern., Inc.*, 968 F.2d 371, 375 (3d Cir. 1992) ....... 7

*Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 464 (4th Cir. 1996) ........ 42

*Sealed Air Corp. v. Scott Paper Co.*, 190 USPQ 106, 108 (TTAB 1975) ......... 15

*Specialty Brands, Inc. v. Coffee Bean Distributors, Inc.*, 748 F.2d 669,
675, 223 USPQ 1281, 1285-86 (Fed. Cir. 1984) ........................................ 17

**JOINT BRIEF RE: SUMMARY JUDGMENT**

ix

*Stulbarg Int'l Sales Co. v. Brush & Co.*, 240 F.3d 832, 840 (9th Cir.2001) ..... 43

*Tektronix, Inc. v. Daktronics, Inc.*, 534 F.2d 915 ............................................... 17

*The U.S. Shoe Corp. v. Chapman*, 229 USPQ 74 (TTAB 1985)........................ 17

*Theta Chi Fraternity, Inc. v. Leland Stanford Junior University*, Case No.
    16-cv-01336-RMW, 2016 WL 4524305 (N.D. Cal. Aug. 30, 2016)........... 35

*Toho Co., Ltd. v. Sears, Roebuck & Co.*, 645 F.2d 788, 790-91
    (9th Cir. 1981) ............................................................................................ 42

*Toyota Motor Sales v. Tabari*, 610 F.3d 1171 (9th Cir. 2010) .......................... 24

*Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992).................... 15

*Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139
    (9th Cir. 2003) ...................................................................................... 41, 42

*Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992
    (9th Cir. 2006)............................................................................................ 47

### ***Rules***

U.S.C. §1052(d) .................................................................................................. 4

---

15 U.S.C. § 1072 .................................................................................. 6

15 U.S.C. § 1114 .................................................................................. 1

15 U.S.C. §1115(a) .............................................................................. 6

15 U.S.C. §1115(b) ......................................................................... 6, 44

15 U.S.C. § 1125(a)(1)(A) ................................................................. 27

F.R.Civ.P. 8(a) ................................................................................... 47

Federal Rule of Civil Procedure 15(a) ............................................... 48

Federal Rule of Civil Procedure 16(b)............................................... 48


### ***Other***

Lanham Act ........................................................6, 13, 17, 19, 42, 44

Anti-Cybersquatting Consumer Protection Act ("ACPA").............. 29

## I.     Trademark Infringement Claim

**A.     Plaintiff's Argument:  Plaintiff Should Be Granted Summary Judgment on its First Cause of Action for Infringement of a Registered Trademark (15 U.S.C. § 1114).**

As set forth in more detail below, summary judgment should be entered in favor of Plaintiff on its trademark infringement claim.  LFP's HUSTLER® registrations are incontestable and provide conclusive evidence that LFP has a protectable ownership interest in the HUSTLER® marks.  In this case, Defendant is merely adding the word "American" before LFP's HUSTLER® mark, on identical and/or competing goods.

### 1.     Plaintiff is the Owner of the HUSTLER® Marks.

The HUSTLER® trademark and service mark has been used by Plaintiff, its affiliates, its licensees and/or its predecessors-in-interest for over forty (40) years. In the early 1970s, the HUSTLER® Mark was first being used in connection with with a string of gentlemen's nightclubs called "The Hustler Club" and an adult entertainment newsletter called *HUSTLER*.  Several years after the first publication of the newsletter, the HUSTLER® mark was being used extensively in commerce in connection with a full-length men's magazine with national distribution.  In 1975, the magazine mark was federally registered in the U.S. (U.S. Reg. No. 1011001).  (See Joint Appendix of Disputed and Undisputed Facts ("Appx."),

Facts P1 – P4, the Declaration of Larry C. Flynt ("Flynt Decl.") ¶¶3-5,and Plaintiff's **Exhibit A**).

In 1975, the year after launching the nationally-distributed HUSTLER® magazine, the founder and publisher of the magazine, Larry Flynt, purchased nude pictures of former First Lady Jacqueline Kennedy Onassis while she was sunbathing on vacation.  Flynt published the photographs in the August 1975 issue of HUSTLER® magazine.  That issue attracted widespread attention, and one million copies were sold within a few days. (Flynt Decl. ¶6).  Thereafter, Larry Flynt and his company, Larry Flynt Publications, grew the magazine and the HUSTLER® business over the many years and decades ahead.

In 1988, HUSTLER® magazine defeated a claim for severe emotional distress and a judgment of approximately $150,000 by the Reverend Jerry Falwell, in a unanimous opinion of the United States Supreme Court written by Chief Justice William Rehnquist.  LFP's business was later immortalized by Hollywood in 1997 in the Oscar-nominated motion picture, *The People vs. Larry Flynt*, which offered the story of Larry Flynt and his HUSTLER business empire (Flynt Decl. ¶¶ 7-8).

Beyond the magazine, operations under the HUSTLER mark have expanded and numerous HUSTLER® marks have been registered in the U.S. and throughout

the world (See Appx. P26; Flynt Decl.¶ 17; P's **Exhibit J**).   Among many other things, LFP launched a clothing line, HUSTLER® apparel in 1998, which has offered hundreds of original HUSTLER designs featuring the HUSTLER mark on everything from shirts, shorts, hats, hoodies, and lingerie (HUSTLER®: U.S. Reg. No. 2689852).  (See Appx. P5-P7, P 22; Ryoo Decl. ¶¶ 4-7; P's **Exhibits B, H and I**).

Moreover, by 1998, LFP started using the HUSTLER HOLLYWOOD® mark in connection with a chain of retail stores (HUSTLER HOLLYWOOD® U.S. Reg. No. 2318186).   At present, there are twenty-one (21) HUSTLER HOLLYWOOD locations throughout the U.S., including stores in: Hollywood, California; San Jose, California; Las Vegas, Nevada; Tacoma, Washington; Lexington, Kentucky; Cincinnati, Ohio; Oklahoma City, Oklahoma; Nashville, Tennessee; San Antonio, Texas; and West Palm Beach, Florida.  (See Appx. P8 – P11; Flynt Decl. ¶12; Plaintiff's **Exhibit C**).

Further, LFP has expanded into broadcasting television channels that broadcast throughout the world (HUSTLER TV® U.S. Reg. No. 3008950), and the HUSTLER mark is used in Los Angeles in connection with a casino and card room (HUSTLER CASINO®: Reg. No. 2479911).   The HUSTLER CLUB® nightclubs (U.S. Reg. No. 2773372) are also found throughout the United States,

including but not limited to locations in Baltimore, Maryland; San Francisco, California; New Orleans, Louisiana; Cleveland Ohio; and New York City.  (See Appx. P13 – P21; Flynt Decl.  ¶¶ 14-16; Plaintiff's **Exhibits E, F and G**).

## 2.    Defendant's Application and Use of "American Hustler"

### a.  Defendant's Trademark Application was Rejected by the USPTO

Defendant Brett filed a service mark application with the United States Patent and Trademark Office ("USPTO") for "American Hustler" on or about June 10, 2015.  (See Appx. P27-28; Brown Decl. ¶3; Plaintiff's **Exhibit K**).    On September 9, 2015, Plaintiff filed with the USPTO a Letter of Protest with regard to Application Serial No. 86657943. (See Appx. P29; Brown Decl. ¶4; Plaintiff's **Exhibit L**).

Thereafter, on October 22, 2015, the USPTO issued an Office Action, refusing to register Defendant's registration based upon the likelihood of confusion with several of LFP's registered HUSTLER marks (U.S. Reg. Nos. 2689852, 4268341, & 4312312).  Among other things, the Examining Attorney, citing 15 U.S.C. §1052(d), stated that the USPTO would not register the applied-for mark on the grounds that it "so resembles a registered mark that it is likely a potential consumer would be confused, mistaken, or deceived as to the source of the goods

and/or services of the applicant and registrant." (See Appx. P30 – P31; Brown Decl.¶¶ 6-7; Plaintiff's **Exhibits M and N**).

Defendant responded to the likelihood of confusion rejection raising various arguments.  However, on January 10, 2016, the USPTO issued a Final Office Action, finding the arguments raised by Defendant to be "unpersuasive." Again, the USPTO reasserted its finding that applicant's applied-for mark was likely to be confused with marks owned by Plaintiff.  (See Appx. P32; Brown Decl. ¶¶ 6-7; Plaintiff's **Exhibit O**).

### b.  Defendant's Website and Sale of Infringing Apparel

In or about the fall of 2015, Defendant launched a newly-designed website located  www.americanhustlerclothing.com  that  displayed  and  sold  various "American Hustler" apparel items.  Defendant claims to have sold approximately $11,000 worth of t-shirts, but then ceased selling and distributing his clothing items after receiving a cease and desist letter from LFP in November 2015.  (See Appx. P33 – P36; Brown Decl. ¶11; Ryoo Decl.¶ 8; Plaintiff's **Exhibits P, Q and R**).

**3.  Defendant's "American Hustler" Mark Infringes the HUSTLER® Mark.**

**a.  The HUSTLER® Registrations Provide Conclusive Evidence of Ownership, Validity, and the Exclusive Right to Use the Mark.**

A plaintiff can establish that it has a valid, protectable trademark by showing that it has a "federally registered mark in goods or services." *Applied Info. Scis. Corp.*, 511 F.3d at 969-70. Registration of a mark "<u>shall</u> be prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the certificate . . . ." 15 U.S.C. §1057(b) [Emphasis]; see also 15 U.S.C. §1115(a). "Registration of a mark is prima facie evidence of the validity of the mark, the registrant's ownership of the mark, and the registrant's exclusive right to use the mark in connection with the goods specified in the registration." *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1124 (9th Cir. 2014). Here, among other things, LFP's HUSTLER® mark is registered for various apparel items and retail services.

Moreover, many of these registered marks have been acknowledged as incontestable under 15 U.S.C. § 1115(b). The effect of incontestable status under the Lanham Act is that the registration goes beyond prima facie evidence to become "<u>conclusive evidence</u>" of the ownership, validity, and exclusive right to use the mark. See, 15 U.S.C. §1115(b). The registrations are also constructive notice of the registrant's claim of ownership of the mark under 15 U.S.C. § 1072. Because the registrations provide conclusive evidence that LFP has a protectable

**JOINT BRIEF RE: SUMMARY JUDGMENT**

**6**

ownership interest in the marks and the exclusive right to use the marks, LFP has satisfied the first element of its trademark infringement claim.

### b.  Defendant's Mark is Likely to Be Confused with Plaintiff's Marks

In this case, the Defendant merely adds the term "American" before Plaintiff's established trademark. "Obviously, the greater the similarity between the two marks at issue, the greater the likelihood of confusion." *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1206 (9th Cir. 2000). Courts, in interpreting federal trademark law, have repeatedly held that "'there is a great likelihood of confusion when the infringer uses the exact trademark' as the plaintiff." *S & R Corp. v. Jiffy Lube Intern., Inc.*, 968 F.2d 371, 375 (3d Cir. 1992).  In these cases, "[the] likelihood of confusion is inevitable." *Opticians Ass'n of Am. v. Independent Opticians of Am.*, 920 F.2d 187, 195 (3d Cir. 1990).

"Cases where a defendant uses an identical mark on competitive goods hardly ever find their way into the appellate reports. Such cases are 'open and shut' and do not involve protracted litigation to determine liability for trademark infringement." *Id.* "[L]ess similarity between the marks will suffice when the goods are complementary, … the products are sold to the same class of purchasers, ... or the goods are similar in use and function." *AMF Inc. v. Sleekcraft Boats*, 599

F.2d 341, 341 (9th Cir. 1979); *see, e.g., Perfumebay.com Inc. v. EBAY, Inc.*, 506 F.3d 1165, 1174 (9th Cir. 2007) ["PerfumeBay" confusingly similar to "eBay" mark]; *Brookfield*, 174 F.3d at 1055 ["moviebuff.com" was essentially the same as "moviebuffonline.com" and likely to confuse the public].

Here, Defendant has used and continues to operate a website using the entirety of Plaintiff's HUSTLER® mark in connection with competitive goods and services.   The marks are identical, save for Defendant's addition of a geographically descriptive term – "American."  Further, on many of Defendant's t-shirt designs, the HUSTLER mark is featured prominently, apart from the disclaimed and descriptive "American" term (See Appx. P44; Ryoo Decl. ¶12; **Exhibit V**).

While Defendant has argued that his mark is not identical to Plaintiff's HUSTLER® mark, his arguments failed before the USPTO.  Among other things, LFP is a U.S. based company, founded by a famous American citizen, Larry Flynt, who is active in American politics and is often interviewed by the U.S. media.  (See Flynt Decl.¶¶ 9, 10 and 18).   Further, the dominate and distinctive feature of Defendant's mark is the term "HUSTLER."

In addition, Defendant Brett's use of words like "*original brand*" and using dates from the 1970's on his t-shirts further highlights the bad faith of Defendant in this instance.  (See Appx. P37-P4; Ryoo Decl. ¶¶ 9-10; Plaintiff's **Exhibits S**

---

**JOINT BRIEF RE: SUMMARY JUDGMENT**

**8**

**and T**).  After all, HUSTLER® magazine started in the 1970's, and Brett only recently started to sell clothing.  Therefore, making it appear that his t-shirts were sold by a long-established company is deceptive, misleading, and further suggests that these t-shirts originate from LFP, or are otherwise connected to LFP and its owner, Larry Flynt.

Defendant has argued that adding "American" before an established mark somehow avoids consumer confusion.[1]  However, Defendant's position would lead to ridiculous conclusions because he essentially suggests that "American Nike" for shoes would not infringe the NIKE® mark, and "American Levi's" for jeans would not infringe the LEVI'S® mark.  Simply put, adding the term "American" before established trademarks does not mitigate against consumer confusion, especially when the mark holder is an American company. Accordingly, confusion is simply inevitable in this instance.

There is no question as to the relatedness of the Plaintiff's goods and services and Defendants' goods and services, as they are identical.  Further, the marketing channels used for Plaintiff's goods and services and Defendant's goods and services are identical and overlapping. Both Plaintiff and Defendant market their competing apparel items via websites, social media sites, and through word

---

[1] Further, it is important to note that Defendant <u>disclaimed</u> the term "American" in his service mark application filed before the USPTO.

**JOINT BRIEF RE: SUMMARY JUDGMENT**

**9**

of mouth.   The current overlapping nature of their competing web presence is enough to demonstrate a likelihood of confusion. *See, e.g., Brookfield*, 174 F.3d at 1057 ("In addition to the relatedness of products, [the parties] both utilize the Web as a marketing and advertising facility, a factor that courts have consistently recognized as exacerbating the likelihood of confusion").

When an alleged infringer knowingly adopts a mark similar to another's, courts will presume an intent to deceive the public." *Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1394 (9th Cir. 1993).  Further, because Plaintiff's marks are registered, Defendant was at least on constructive notice that the mark was owned by another party prior to their adoption of the mark.

Given the conclusive evidence that LFP has a protectable ownership interest in the HUSTLER® marks, plus the fact that Defendant is merely adding the word "American" before "Hustler," on identical and competing goods, summary judgment should be entered in favor of Plaintiff on its trademark infringement claim.

**B.**  **Defendant's Argument:**

**1.**  **Defendant is the Owner of AMERICAN HUSTLER**

The defendant is the instructor for the worlds largest pool league, (American pool players association with over 250,000 members) coached many world champions,

the Hong Kong national team, plays pool professionally, and is very well known around the world in the pool industry. In 2012 Mr Brett was in a car accident, unable to play pool, and couldn't fulfill his coaching duties. In December 2014, Lee (born in 1974) and his then girlfriend Reni Rose (born in 1971) decided to start a clothing line in the pool industry that sold quality clothes, (the industry is awash with cheap clothing) and American Hustler was born. Mr Brett invested all of the settlement ($32,000) into the business. Hustler is a very commonly used word in the English dictionary. The famous 1961 movie "The hustler" being & 1986, "The color of money" starring Tom Cruise was the sequel to "The Hustler" are about a **pool hustler** In 1915 WC Fields made a movie about pool hustlers, the English dictionary mentions a pool hustler, the word Hustler and the pool industry are synonymous. **(See Appx. D4-D6,D7,D9-D10,D34,D41,D48 Exhibit's 3,19,23,26)**. The name American Hustler has a very unique meaning, the word American represents, the clothing is all American made, of the best quality you can buy. Hustler represents what a hustler means in the pool world. The star behind the brand name, represents Lee being a star in the pool industry. The star is red, the color of Lee's favorite team, Liverpool F.C. Lee Brett filed a service mark application with the United States Patent and Trademark Office ("USPTO") for "American Hustler" on June 10, 2015. In July Lee Brett and Reni Rose attended the BCA (billiard congress of America) national singles and team championships in Las Vegas, and then the APA team

---

**JOINT BRIEF RE: SUMMARY JUDGMENT**

**11**

championship nationals in Las Vegas, setting up a booth. **(See Exhibit 48)**. These are special events for pool players. September 22nd 2015 American Hustler Serial Number 86657943 was approved for publication by the USPTO **(See Appx. D1 ; Exhibit 1)**. October 22nd 2015 defendant received an office action to overcome, due to a letter of protest from the plaintiffs. On the 10th of January the USPTO issued an office action  due to LINGERIE. We never even sold lingerie, nor intended too. **(See Appx. D36 ; Exhibit 21).** The examiner quoted that "The goods of the applicant and registrant are likely to travel through the same channels of trade and they are likely to be encountered by the same consumers who are likely to be confused as to the source of goods and services of the parties in question" The defendant is allowed to appeal to the examiner to re look at the application or appeal to the TTAB **(See Appx. D3 ; Exhibit 2)**. Before the defendant could appeal, and remove LINGERIE, the plaintiffs filed the federal lawsuit, which takes precedence over the TTAB, this would stop the defendant from appealing to the TTAB, and thus removing LINGERIE. The defendant doesn't sell lingerie nor had any intention of selling lingerie. Under the sleekcraft 8 factors of likelihood of confusion the examiner failed to look at the channels of trade and the degree of care used by consumer's care when buying. **<u>The 9th Circuit issues terse memorandum</u>**. More recently, the Ninth Circuit issued a terse memorandum disposition that held: "Summary judgment is generally disfavored in trademark litigation, because the

**JOINT BRIEF RE: SUMMARY JUDGMENT**

nature of trademark case analysis is fact intensive." CELS Enters., Inc. v. Rock & Roll Religion, Inc., 2012 WL 3157150 (9th Cir. Aug. 6, 2012). The 9th circuit takes each case on it's on merit and uses the the 8 factors of likelihood of confusion using the Amf inc. v. Sleekcraft boats, 599 f. 2d 341 (9th cir. 1979) determining whether there is genuine issue of material fact as to the likelihood of confusion between the parties' respective marks. The cases that the plaintiff's have quoted need to be analyzed in more detail. There are completely different facts to this case. Pom Wonderful LLC v. Hubbard, 775 F.3d 1118, 1124 (9th Cir. 2014). According to court documents, no one else in the industry had used "pom" before that. Plaintiff's LFP claims exclusive rights. **HUSTLER STATE® US reg No 1934785 IS THE SENIOR USER NOT** (LFP's hustler)IC 025. US 022 039. which is now deemed incontestable under the Lanham Act. for clothing, registered November 14, 1995. FIRST USE: 19910901. **FIRST USE IN COMMERCE: 19910901 (See Appx. D14 ; Exhibit 6).** Hustler U.S. Reg. Nos. 2689852 – IC 025. US 022 039. FIRST USE: 19981203. FIRST USE IN COMMERCE: 19981203 Hustler Hollywood U.S. Reg. No 2318186 - retail store services relating to books and prerecorded video cassettes, **NOT clothing or Apparel.** FIRST USE IN COMMERCE: 19981203 HustlerHollywood U.S. Reg. No.4312312 was registered on April 2, 2013 featuring apparel, hats. Hustlerstore U.S. Reg. No 4268341was registered on January 1st 2013 featuring apparel, lingerie, hats. **Conclusive evidence that the defendant has**

---

**JOINT BRIEF RE: SUMMARY JUDGMENT**

**13**

**proved that the plaintiff LFP doesn't have exclusive right to use the marks, LFP has not satisfied the first element of its trademark infringement claim.**

"Obviously, the greater the similarity between the two marks at issue, the greater likelihood of confusion." In GoTo.com, Inc. v. Walt Dz.s~~ey Co., 202 F.3d 1199, 1206 (9th Cir. 2000). The logos where almost identical. **(See Appx. D62 ; Exhibit 31).**



**Plaintiff's claim of Identical Marks? See for yourself.**

    

The logo's of American Hustler and Hustler are clearly no where near identical. **(See Appx. D21 ; Exhibit 10)** <u>**Conclusive evidence that the defendant has proved that the marks are not identical, LFP has not satisfied the second element of its trademark infringement claim.**</u> Similarity is best adjudged by appearance, sound, and meaning. The defendant's mark is not the same, doesn't look the same, sound the same, the font is different. **(See Appx. D21 ; Exhibit 10)** By quoting NIKE® and LEVI®, LFP are alleging the hustler marks are as famous

---

as NIKE® and LEVI®. The Plaintiff claims that the Defendant is merely adding the word "American" on identical and/or competing goods. This is not the full facts, the American hustler mark also has a huge red star behind the words American Hustler, (something the plaintiff forgets to mention). When considering the similarity of the marks they are clearly different marks in their entirety as to appearance, sound, connotation and commercial impression. **Strength or Weakness of the Plaintiff's Mark.** See Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 768 (1992). "The strongest marks. Those which receive the maximum trademark protection (NIKE®,LEVI®) Entrepreneur Media, Inc. v. Smith, 279 F.3d 1135, 1141 (9th Cir. 2002). The weakest marks, entitled to no trademark protection, are "generic." The plaintiffs mark is very weak, being that it is generic. Fair use is allowed for a generic word. (motion to dismiss) If the mark is not ruled to be generic, at best it is descriptive, giving it the lowest protection"[2] NIKE® and

---

[2] Recot, Inc. v. M.C. Becton, 214 F.3d 1322, 1329, 54 USPQ2d 1894, 1897 (Fed. Cir. 2000). In evaluating the similarities between marks, the emphasis must be on the recollection of the average purchaser who normally retains a general, rather than specific, impression of trademarks. Sealed Air Corp. v. Scott Paper Co., 190 USPQ 106, 108 (TTAB 1975). The points of comparison for a word mark are appearance, sound, meaning, and commercial impression. Palm Bay Imports, Inc. v. Veuve Clicquot Ponsardin MaisonFondee en 1772, 396 F.3d 1369, 73 USPQ2d 1689, 1691 (Fed. Cir. 2005), citing In re E. I. du Pont de Nemours & Co., 476 F.2d 1357, 1361, 177 USPQ 563, 567 (C.C.P.A. 1973). Importantly is whether the marks in their entirety convey significantly different commercial impressions. In re Farm Fresh Catfish Co., 231 USPQ 495 (TTAB 1986) (CATFISH BOBBERS (with "CATFISH" disclaimed) for fish not likely to be confused with BOBBER for restaurant services); In re Shawnee Milling Co., 225

LEVi® are clearly fanciful, thus the strongest, hustler is a generic word. )LFP is fighting to stop it becoming generic) Ebay was regarded as a strong mark, hustler is clearly not. Descriptive marks **must show a secondary meaning** or have become distinctive of the goods in commerce.) (Goods being clothing.)Whether a mark has acquired secondary meaning is a "factual determination, proof of which entails vigorous evidentiary requirements," Marshall, 2012 WL 1079550, and the burden of proof to establish secondary meaning rests at all times with the plaintiff. Here, Plaintiff has produced no evidence, or even argument, to show that its Asserted Mark has acquired secondary meaning. The Ninth Circuit Court of Appeals held that one factor militating against a finding of acquired distinctiveness was the **"lack of exclusivity Accordingly"** Plaintiff's Asserted Mark lacks secondary meaning and is a weak mark. Third-party registrations may be relevant to show that the mark or a portion of the mark is descriptive, or so commonly used that the public will look to other elements to distinguish the source of the goods or services. See, e.g., AMF Inc. v.American Leisure Products, Inc., 474 F.2d 1403, 1406, 177 USPQ 268, 269-70(C.C.P.A. 1973); Plus Products v. Star-Kist Foods, Inc., 220 USPQ 541, 544(TTAB1983). Properly used in this limited manner, third-

---

USPQ 747 (TTAB 1985) (GOLDEN CRUST for flour not likely to be confused with ADOLPH'S GOLD'N CRUST and design for coating and seasoning for food items);In re S.D. Fabrics, Inc., 223 USPQ 54 (TTAB 1984 (DESIGNERS/FABRIC for retail fabric store services not likely to be confused with DAN RIVER DESIGNER FABRICS.

**JOINT BRIEF RE: SUMMARY JUDGMENT**

**16**

party registrations are similar to dictionaries showing how language is generally used See, e.g., Specialty Brands, Inc. v.Coffee Bean Distributors, Inc., 748 F.2d 669, 675, 223 USPQ 1281, 1285-86 (Fed. Cir. 1984); Tektronix, Inc. v. Daktronics, Inc., 534 F.2d 915, Even marks that are identical in sound and/or appearance may create sufficiently different commercial impressions. See, e.g., In re Sears, Roebuck and Co., 2 USPQ2d 1312 (TTAB 1987) (CROSS-OVER for bras held not likely to be confused with CROSSOVER for ladies' sportswear, ; In re British Bulldog, Ltd., 224 USPQ 854 (TTAB 1984) (PLAYERS for men's underwear. In re Sydel Lingerie Co., Inc., 197 USPQ 629 (TTAB 1977) (BOTTOMS UP for ladies' and children's underwear held not likely to be confused with BOTTOMS UP for men's clothing. If the common element of two marks is "weak" in that it is generic, descriptive of the named goods or services, consumers typically will be able to avoid confusion unless the overall combinations have other commonality.[3]

**Comparing NIKE® to Hustler**. This is a completely misguided statement, to compare hustler with NIKE® or LEVI® without proof, **strict proof thereof is demanded.** That would be like comparing WALMART® to SHOP N SAVE. NIKE® is famous and protected under the Lanham act for dilution. You will notice

---

[3] See. In re Bed & Breakfast Registry, 791 F.2d 157, 229 USPQ 818 (Fed. Cir. 1986) (BED & BREAKFAST REGISTRY) v (BED & BREAKFAST INTERNATIONAL) The U.S. Shoe Corp. v. Chapman, 229 USPQ 74 (TTAB 1985) (COBBLER'S OUTLET for shoes held not likely to be confused with CALIFORNIA COBBLERS (stylized) for shoes).

the plaintiff's have not made a summary judgment for their outrageous dilution claims. **LFP's Evan Roosevelt's admits people under 30 aren't familiar with HUSTLER (See Appx. D94; Exhibit's (33 and 39)**. It's Evan Roosevelt's job to change that. The 34-year-old has a background in both politics and tech consulting, and is currently attempting to revive the flagging **Hustler brand** by mirroring successes in the worlds of music and traditional publishing. He recently helped broker a licensing deal with the avant-streetwear brand Hood By Air, which he views as the first step in introducing Hustler to a millennial audience. **"The marketplace of adult entertainment** is changing, and we want to change with it," he tells me. **"I think anyone under 30 or so isn't really familiar with Hustler"** NIKE®  is the most powerful of trademarks on the scale, it is fanciful, NIKE® is also famous, you wouldn't see NIKE® lawnmowers, pool tables or NIKE® boat trailers. But you do have the registered marks for HUSTLER® US Reg No 1431031 Boat trailers, HUSTLER® US Reg No 1825275 pool tables, HUSTLER® US Reg No 1985194 Lawn mowers. This is because HUSTLER is not famous, they are also not famous for the likelihood of confusion. LFP's hustler mark, is not even well known. Without any evidence to back these claims, **strict proof thereof is demanded.** Hustler is  a commonly used word, hence all the marks registered. A significant member of their own company admitting they aren't even well known. The plaintiff is not allowed to own the word hustler, The

**JOINT BRIEF RE: SUMMARY JUDGMENT**

**18**

HUSTLER® trademark and service mark has been used by many others for over 30 years., there are over 381 trademarks on the uspto database, registered or applied for with the word hustler, this also clearly shows that the word hustler is generic, and shouldn't of been approved to be registered. **(See Appx. D11-D13,D45,D63;Exhibit's  (3,4,5,6,8,14,15,16,17,18,25,32,39).** There are many other marks with the name hustler in the same category selling clothing. 3 The actual facts need to be taken on a case-by-case basis. In connection with a chain of retail stores, the plaintiffs are not pointing the actual facts, that **they are a sex shop in a completely different industry** with no likelihood of confusion. The defendant sells his apparel at [4]pool and billiard shows, the plaintiffs sells their sexually

_____

[4] Since everyone deserves the right to accurately identify the type of goods or services it sells, to allow a single company to claim trademark rights to a generic term would impoverish the language and unfairly hamper competition. The common law's tolerance of a certain degree of confusion on the part of consumers followed from the very fact that in cases like this one, an originally descriptive term was selected to be used as a mark, not to mention the undesirability of allowing anyone to obtain a complete monopoly on use of a descriptive term simply by grabbing it first. The Lanham Act adopts a similar leniency, there being no indication that the statute was meant to deprive commercial speakers of the ordinary utility of descriptive words. "If any confusion results, that is a risk the plaintiff accepted when it decided to identify its product with a mark that uses a well known descriptive phrase." Cosmetically Sealed Industries, Inc. v. Chesebrough-Pond's USA Co., 125 F.3d at 30. See also Park 'N Fly, Inc. v. Dollar Park & Fly, Inc., 469 U.S. 189, 201 (1985) (noting safeguards in Lanham Act to prevent commercial monopolization of language); Car-Freshner Corp. v. S.C. Johnson & Son, Inc., 70 F.3d 267, 269 (2d Cir. 1995) (noting importance of "protect[ing] the right of society at large to use words or images in their primary descriptive sense").

**JOINT BRIEF RE: SUMMARY JUDGMENT**

**19**

graphic apparel **(See Appx. D51-D57; Exhibit 29)** out of their own sex shops **(See Appx. D37 ; Exhibit 22)** the plaintiffs website states that they are a sex shop **(See Appx. D38 ; Exhibit 22)** "Hustler Hollywood stores exist because of our mission to provide people **with a place to be curious and shop without that "seedy" feeling that many sex shops** give off". **Even LFP's Evan Roosevelt clarifies they are in the adult entertainment market. (See Appx. D94; Exhibit's (33 and 39).** Electronic Design & Sales, Inc. v. Electronic Data Systems Corp., 954 F.2d 713 (Fed. Cir. 1992). Sales to the same customers. But no conflict. Defendant is in a completely different industry, the meaning of a hustler is associated with the pool industry before the plaintiffs mark was used. Many other trademarks have been co-existing peacefully in the marketplace with no likelihood of confusion. LFP, IP, LLC hustler mark is not distinctive, the word hustler is a generic word. Interstellar Starship Services, Ltd. v. Epix, Inc., 304 F.3d 936, 944 (9th Cir. 2002) (citing Hasbro Inc. v. Clue Computing, Inc., 232 F.3d 1, 2 (1st Cir. 2000) (noting very little similarity between Hasbro's board game CLUE and the products and services of Clue Computing)**the Ninth Circuit noted that Epix has no exclusive claim to its trademark.** Indeed, the record reflects that at least eight companies have registered the EPIX mark or a close variation with the PTO." There are 22 registered hustler or similar hustler marks, of the 22 registered marks 6 sell clothing, 5 of which where registered before Hustler Hollywood was for clothing.

---

**JOINT BRIEF RE: SUMMARY JUDGMENT**

**20**

LFP also claims exclusive right to use the mark in connection with the goods specified, but fails to mention these other marks where registered before them, and have been peacefully co-existing without any likelihood of confusion. LFP recently agreed to let IS FOR HUSTLERS® mark to be registered for clothing after they appealed to the TTAB. IS FOR HUSTLERS® mark states the following, **"excluding clothing directly or indirectly linked to adult entertainment"** HUSTLE® US registration number 4723612 was registered on April 21, 2015 for graphic t-shirts. There are many registered hustler trademarks, more clear evidence, that they are not the source of goods by the consuming public of the United States, clear factual evidence that there is no likelihood of confusion. Some of these other Hustler marks have peacefully coexisted without any confusion for over 30 years. **(See Appx. D14-D18,D45 and D45 ; Exhibit 6)** HUSTLER® US Reg No 1347192 reg (1985) HUSTLER® US Reg No 1431031 (1987) HUSTLER® US Reg No 1825275 (pool tables) (1994) HUSTLER® US Reg No 1985194 (1996) HUSTLER® US Reg No 2423910 (2001) HUSTLER® US Reg No 3922785 (2011) ADIDAS® NIKE® AMAZON® SPREADSHIRT® FASO® ETSY® and CAFEPRESS® among many others, have all sold clothing with the generic word hustler on it this clearly shows how popular the word Hustler is, **(See Appx. D28-D33,D44,D90 and D91; Exhibit's 16,17, and 18)** The fact that there are many laches, a clear lack of policing of the hustler mark. If there was any

**JOINT BRIEF RE: SUMMARY JUDGMENT**

**21**

distinction, it has been lost. **LFP's Evan Roosevelt's job is to, "revive the flagging brand" (See Appx. D94; Exhibit's (33 and 39). <u>What is the difference with POLO and HUSTLER?</u>** The words Polo and Hustler? Both are common words in the English dictionary. 79 registered marks exist for the word polo for clothing.**(See Appx. D19 ; Exhibit 7).** How is HUSTLER any different to the word Polo? Here are just a few of the POLO marks for clothing.[5] **Evidence of Actual Confusion -** There isn't any, plaintiff's admit to having done **no surveys. (See Appx. D27 ; Exhibit's (13).** Plaintiffs false accusations of bad faith, there are many issues of disputed facts. The defendant is in the pool industry, **(See Appx. D41 ; Exhibit 23)** the word hustler has been associated with the pool industry before LFP was formed, Lee Brett is well known in the pool industry, Lee Brett was born in 1974,In the "respect the game design" the plaintiffs claim bad faith intent using 19745 . If you look at these designs you will see the words **"respect the game", "pool", "focus", "zone,** which are used in pool" included with the Letters AH", which stand for American Hustler, the numbers "19" "74" are either side of an eagle, they represent the year the defendant was born. Reni Rose was

---

[5] POLO® ALL POLO® VICUNA POLO® PRIMA POLO® PERFECT POLO® TEXAS POLO® ARGENTINO POLO® POLO U.S.A® US POLO ASSN® HV POLO® POLO NATION® U.S.A WATER POLO® JON POLO® POLO GOLF® POLO JEANS® POLO SPORT® POLO PRLC® MARCO POLO® MARC O POLO® MARCO NOT POLO® POLO STAR® Other variations include, California, Hawaii, Houston, Malibu, St Moritz, New York, Beverly Hills.

**JOINT BRIEF RE: SUMMARY JUDGMENT**

born in 1971, the words original are generic words used by many clothing brands. The defendant's website states who the owner is, that they clearly sell pool clothing.[6] **"Lee Brett the founder of American Hustler.** We decided to start American Hustler so **players can wear stylish apparel, in and out, of the pool hall.** There are many pool related terms on the designs, which the plaintiff fails to mention. The website includes the following "**Hustling** never looked so good" "**Pool clothing** that jumps off the rack" "**Pool apparel** from a different angle" **(See Appx.    D4-D6,D34,    D35,D47,D48,D49-    D50,D65,D101;    Exhibit 3,11,19,20,26,27,28,34 and 44)** The plaintiffs Social media has sex items and semi-naked images all over it **(See   Appx.   D61 ; Exhibit 22)** When consumers are buying the defendant's apparel **they are pool players,** who are in a niche marketplace, pool events have been held in Las Vegas for over 40 years **(See Appx. D88; Exhibit 36)** The consumers who buy from the plaintiffs are **entering a sex shop**, or shopping online at the **hustler Hollywood sex store.** The consumer clearly knows who they are purchasing the goods from, they are sophisticated enough to know, there is no comparison, there is no likelihood of confusion.

---

[6] The defendant was born in 1974, the defendants ex girlfriend Reni Rose was born in 1971, the defendant cleared this up with LFP's lawyers Adi Schnapps and Mark Hoffman during a meeting in  LA. The reason why some designs have 1974 or 1971 on them. LFP admits to not owning 1974. They want to steal and use American Hustler as their own, told me to my face many times, that they will steal this off of me. The first step in introducing Hustler to a millennial audience.

**JOINT BRIEF RE: SUMMARY JUDGMENT**

**23**

Defendant only knew of LFP after they filed a letter of protest. These are ridiculous accusations being made by the plaintiffs, once again the plaintiff's are twisting the real facts of the case and making outrageous false accusations, the defendant did not engage in malicious, bad faith, fraudulent, deliberate or willful conduct. **Marketing Channels and Degree of Care Used by Consumers** "The case is Hasbro Inc. v. Asus Computer International LLC et al., case number 2:11-cv-10437, (C.D. Cal. Mar. 23, 2012). The U.S. District Court for the Central District of California. Points to the fact that a Google search for "optimus prime tablet" picks up Asus's "Transformer Prime" tablet. Google is the world's largest search engine. Reasonable consumers understand that when executing a key word search, **Search for pool clothing (See Appx. D99 ; Exhibit 42)** the results they are presented with originate from thousands of sources, if not more. See Network Automation, 638 F.3d at 1152 ("the default degree of consumer care is becoming more heightened as the novelty of the Internet evaporates and online commerce becomes commonplace") (citing Toyota Motor Sales v. Tabari, 610 F.3d 1171 (9th Cir. 2010)) Consumers who use the internet for shopping are generally quite sophisticated about such matters, and not be confused at all. A plaintiff asserting initial interest confusion must still "demonstrate likely confusion, not mere diversion." Network Automation, Inc. v. Advanced Systems Concepts, Inc., 638 F.3d 1137, 1149 (9th Cir. 2011). See AMF, Inc. v. Sleekcraft Boats, 599 F.2d 341,

348- 49 (9th Cir. 1979). The assessment of likelihood of confusion is predominately factual in nature. E&J Gallo Winery v. Gallo Cattle Co., 967 F.2d 1280, 1290 (9th Cir. 1992). Consumers are not confused by the source of the defendant's goods being from the pool industry. The products differ markedly in design and function. **(See Appx. D58 ; Exhibit's 30, 34,35 and 37).** plaintiff's **(See Appx. D51- D57; Exhibit 29)**. Target very different consumers. AMERICAN HUSTLER clothing, consumers searching for the cited marks products **(See Appx. D99 ; Exhibit 20)** would be different from those viewing Applicant's products. See Electronic Design & Sales Inc. v. Electronic Data Systems Corp., 21 USPQ2d 1388,1392 (Fed. Cir. 1992), "sophisticated consumers may be expected to exercise greater care." Pignons S.A. de Mecanique de Precision v. Polaroid Corp., 212 USPQ 246, 252 (1st Cir. 1981); and "There is always less likelihood of confusion where goods are expensive and purchased after careful consideration." Astra Pharmaceuticals Prods., Inc. v. Beckman Instruments, Inc., 220 USPQ 786, 790 (1st Cir. 1993). In re E.I. du Pont de Nemours & Co., 476 F.2d 1357, 177 USPQ 563 (C.C.P.A. 1973). commercial impression between HUSTLER HOLLYWOOD and AMERICAN HUSTLER and huge red star design, is also distinguishable. **(See Appx. D20 ; Exhibit 9).** See In re Martin's Famous Pastry Shoppe, Inc., 748 F.2d 1565, 1566 (Fed. Cir. 1984) and Massey Junior College, Inc. v. Fashion Institute of Technology, 492 F.2d 1399, 181 USPQ 272 (C.C.P.A. 1974). When determining

**JOINT BRIEF RE: SUMMARY JUDGMENT**

likelihood of confusion, fame is measured with regard to "the class of customers and potential customers of a product or service, and not the general public." Palm Bay Imports, at 396 F.3d 1375, 73 USPQ2d 1695. **Not** famous, their class of customers, are those interested in sexual related products. While the applicants class of customers are in the pool industry. Likelihood of expansion of product lines, the plaintiffs haven't entered the same industry as the defendant's, and with this lawsuit being brought, they also have a bad name, and are not welcome in the niche and closed market that is the pool industry. With the fame in the industry of the defendant, the pool market is well aware of the plaintiffs frivolous lawsuit. Recent clothing lawsuit no likelihood of confusion Icebreaker Ltd. v. Gilmar S.p.A., November 26, 2012, No. 3:11-CV-00309-BR. 911 F. Supp.2d 1099 (2012) no likelihood of confusion was found **(See Appx. D 100; Exhibit 43.)** Regarding Mr Flynt being an American citizen, and in politics. During the proceedings in Keeton v. Hustler **"Fuck this court!"** and **called the justices "nothing but eight assholes and a token cunt"** (referring to Justice Sandra Day O'Connor). Chief Justice Warren E. Burger had him arrested for contempt of court. **Flynt wore an American flag as a diaper and was jailed for six months for desecration of the flag.** Paid his $10,000 in pennies. Defendant asks the judge to lift the injunction, plaintiff's told defendant they had. **Given the conclusive evidence that there is**

---

**JOINT BRIEF RE: SUMMARY JUDGMENT**

**26**

**no likelihood of confusion, Summary judgment should be entered in favor of the defendant on the plaintiff's trademark infringement claim.**

## II.     False Designation of Origin Claim

### A.     Plaintiff's Argument:     Plaintiff Should Be Granted Summary Judgment on its Third Cause of Action for False Designation of Origin (15 U.S.C. § 1125(a)).

Plaintiff is also likely to succeed on its false designation of origin claim under 15 U.S.C. § 1125(a), as a false designation of origin claim turns on the likelihood of confusion as well.   In order to prevail on a false designation of origin claim, a plaintiff must show that the defendant has used in commerce a word, term, name, symbol, and/or device which "is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." 15 U.S.C. § 1125(a)(1)(A).

In this case, Defendant has and is using the infringing "American Hustler" mark on his website and is likely to cause confusion or mistake regarding the connection between Plaintiff and Defendant, and/or the origin, sponsorship, or

approval of Defendant's products.  By Defendant's use of an almost identical mark, save for the addition of the term "American," consumers are likely to assume either that Plaintiff has authorized Defendant to use the registered marks, or that Plaintiff is actually the source of Defendant's products.

For all of the reasons set forth above, summary judgment should be entered in favor of Plaintiff on its 15 U.S.C. § 1125(a) claim.

**B.     Defendant's Argument:**

Defendant Should Be Granted Summary Judgment on the plaintiff's Third Cause of Action for False Designation of Origin Defendant will also succeed on the false designation of origin, as a false designation of origin claim turns on the likelihood of confusion as well.

The defendant has clearly shown that there is no likelihood of confusion under the 8 factors. <u>See AMP, Tnr,. v. Sleekcraft Boats. 599 F.2d 341, 348-49 (9th Cir. 1976).</u> [7]Summary judgment should be ruled in favor of the defendant. There is

[7] **Proximity or Relatedness of Goods** - Pool industry to the sex industry. **Similarity of the Marks -** Appearance, sound and commercial impression are completely different. **Actual Confusion** - LFP admits to no survey evidence. **Marketing Channels** - Completely different markets, LFP has their own sex shops, and online sex shop. Defendant sells at pool shows and online website which states what they sell pool apparel. **Purchaser Care** -Consumers buying plaintiff's sexual clothing would be in their sex store or entering their online sex

clearly no likelihood of confusion and this case should be thrown out of court in favor of the defendant. For all of the reasons set forth above, summary judgment should be entered in favor of the defendant.

### III.    Anti-Cybersquatting Consumer Protection Action Claim

### A.    Plaintiff's Argument:   Plaintiff Should Be Granted Summary Judgment on its ACPA Claim (15 U.S.C. § 1125 (d)(1)(A)).

In 1999, Congress passed the Anti-Cybersquatting Consumer Protection Act ("ACPA"). The ACPA "establishes civil liability for 'cyberpiracy' when a plaintiff proves that (1) the defendant registered, trafficked in, or used a domain name; (2) the domain name is identical or confusingly similar to a protected mark owned by the plaintiff; and (3) the defendant acted 'with bad faith intent to profit from that mark.'" *DSPT Intern., Inc. V. Nahum*, 624 F.3d 1213, 1218-19 (9th Cir.2010).  As

---

shop. Consumers buying the defendant's pool apparel, would be at a pool show or searching for pool clothing, the consumer has a high degree of care when making purchasing decisions. **Intent -** Defendant's website clearly states the owners name, that they sell pool clothing, defendant was born in 1974, LFP admits to not owning 1974, defendant is in the pool industry, the word hustler is synonymous with the pool industry. There is no bad faith. Likelihood of **Expansion -** Plaintiff's have never entered the pool industry nor have they said they would. Defendant won't be entering the sex industry. **Mark Strength -** Plaintiff's mark is generic and very weak, there are a large number of third parties with the word hustler and for clothing.

---

set forth above, Defendant used and continues to use a website that incorporates

the HUSTLER® mark.  (See Appx. P33; **Exhibit P**).

"[R]egistration of a domain name for a Web site does not trump long-established principles of trademark law. When a firm uses a competitor's trademark in the domain name of its web site, users are likely to be confused as to its source or sponsorship. Similarly, using a competitor s trademark in the metatags of such web site is likely to cause what we have described as initial interest confusion. These forms of confusion are exactly what the trademark laws are designed to prevent." *Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1066 (9th Cir. 1999).

The Ninth Circuit thoroughly analyzed the dangers of consumer confusion in a similar Internet context in *Brookfield. Brookfield*, 174 F.3d at 1057:

"Given the virtual identity of moviebuff.com' and 'MovieBuff,' the relatedness of the products and services accompanied by those marks, and the companies' simultaneous use of the Web as a marketing and advertising tool, many forms of consumer confusion are likely to result. People surfing the Web for information on 'MovieBuff' may confuse 'MovieBuf' with the searchable entertainment database at 'moviebuff.com' and simply assume that they have reached Brookfield's web site. In the Internet context, in particular, entering a web site takes little effort-usually one click from a linked site or a search engine list; thus, Web surfers are more likely to be confused as to the ownership of a web site than traditional patrons of a brick-and-mortar store would be of a store's ownership. Alternatively, they may incorrectly believe that West Coast licensed 'MovieBuff' from Brookfield, or that Brookfield otherwise sponsored

---

**JOINT BRIEF RE: SUMMARY JUDGMENT**

West Coast's database. Other consumers may simply believe that West Coast bought out Brookfield or that they are related companies."

Plaintiff's affiliate, LFP Internet Group, LLC, owns thousands of domain names that incorporate the HUSTLER mark, including but not limited to HUSTLER.com; HUSTLERHOLLYWOOD.com; HUSTLERSTORE.com; HUSTLERAPPAREL.com; HUSTLERLINGERIE.com; HUSTLERCLOTHING.com; and HUSTLERLIVE.com, among many others. (See Appx. 12; Ryoo Decl. ¶ 3; Plaintiff's **Exhibit D**).

Plaintiff contends that Defendant registered and used the domain name, in bad faith, and in an effort to ride the coat tails of LFP and its established HUSTLER® marks. Incorporating the generic or descriptive words "American" and "clothing" do not distinguish Defendant's domain name from the various LFP domain names and websites. A consumer searching for "hustler clothing" or "hustler American" could easily believe that Defendant's website is operated by, or is affiliated with, the long established HUSTLER® brand owned by Plaintiff. Accordingly, for all intents and purposes, the distinctive component of Defendant's domain name – "Hustler" – is identical to LFP's established brand.

Given the above, summary judgment should be entered in favor of Plaintiff on its ACPA claim.

**B.**  **Defendant's Argument:**

Defendant Should Be Granted Summary Judgment on the plaintiff's ACPA Claim. LFP claims that the defendant deliberately, intentionally, and willfully profited off the plaintiffs fame, accusing the defendant of cybersquatting. The defendant did not engage in malicious, bad faith, fraudulent, deliberate or willful conduct, the defendant acted in good faith, all the facts clearly show this. **(See Appx. D4-D6 ;D9,D10,D34,D35,D41,D48,D49 and D93; Exhibit 3,19,20,22,23,26,27, and 28)** The plaintiff's continue to make outrageous false accusations of bad faith and intent. The defendant did not engage in malicious, bad faith, fraudulent, deliberate or willful conduct, the defendant only knew of LFP after they filed a letter of protest. The defendant acted in good faith, all the facts clearly show this. The following web addresses, all are related to sex, and some are harmful to your computer. **(See Appx. D99 ; Exhibit 20)** Given all of facts in the case, there is no likelihood of confusion, the defendant did not engage in malicious, bad faith, fraudulent, deliberate or willful conduct, the defendant acted in good faith and all

the facts clearly show this, summary judgment should be entered in favor of the defendant.

### IV.   Defendant's Motion:   LFP's hustler marks are NOT famous and widely recognized by the general consuming public of the United States

### A. Defendant's Argument:

Defendant Should Be Granted Summary Judgment on its claim that LFP's hustler marks are NOT famous and widely recognized by the general consuming public of the United States.  LFP claims the hustler marks are famous **(See Appx. D23-D24 ; Exhibit 12)**. and widely recognized by the general consuming public of the United States, (throughout their complaint filed on 01/08/16) LFP's hustler mark is NOT famous or well known with the general consuming public of the United States. **I ask the judge any references to fame should be stricken,** these are outrageous claims made by the plaintiffs, **strict proof thereof is demanded.** This includes the following pages and references from the lawsuit, filed by the plaintiffs LFP, IP, LLC, who claim the following. Page 2, Nature of Action #1. **"The famous Hustler marks"**. **Page 12, #12**. **"The Hustler marks have become famous and the public** has come to know" **Page 14, #21**. **"Fame associated with the Hustler marks" COUNT I –** Infringement of registered trademark. **Page 15,  #25.** "Upon information **and belief. "the goodwill associated by the public" COUNT II –**

---

Federal unfair competition designation of origin. **Page 16, #30. "LFP's Hustler marks are widely recognized by the general consuming public of the United States as a designation of the source" Page 16, #31**. To trade off **the fame and notoriety" Page 16 #32.** "Will continue to deprive, plaintiff of the **ability to control the consumer perception" Page 16/17 #33**. "Will **result in deception and confusion of the public"** "The plaintiffs **exclusive rights** to exploit **said famous Hustler marks" Page 17, #35**. **"Causing plaintiff irreparable damage and injury"** Defendant demands Strict proof hereof is demanded to the damage and injury. **Count III – Trademark dilution** The **plaintiffs claim fame** through this section, this should be struck out. **COUNT IV – Violation of the anticybersquatting consumer protection act. Page 19, #46**. **"Dilutive of LFP's marks" Page 19, #47.** Plaintiff LFP has **sustained irreparable harm** and will continue to **sustain irreparable harm"** Strict proof hereof is demanded. **LFP's Evan Roosevelt's** admits **people under 30 aren't familiar** with HUSTLER "I think anyone under 30 or so **isn't really familiar** with Hustler as much as they could be." **(See Appx. D94; Exhibit's (33 and 39).** To state a claim for trademark dilution, a plaintiff in the Ninth Circuit must allege the defendant's use of the mark is likely to cause dilution by blurring or tarnishment. Jada Toys, Inc. v. Mattel, Inc., 518 F.3d 628, 634 (9th Cir. 2007). For the first element, a mark must be "widely recognized by the general consuming public of the United States as a designation of source of

the goods or services of the mark's owner."15 U.S.C. § 1125(c)(2). In 2006, Congress revised the statute to specifically exclude dilution protection for marks whose fame extends only to niche markets. This restricts dilution claims to "those few truly famous marks like Budweiser beer, Walmart, Coca Cola, Nike and the like."Bd. of Regents, Univ. of Tex. Sys. ex. rel. Univ. of Tex. at Austin v. KST Elec., Ltd., 550 F. Supp. 2d 657, 679 (W.D. Tex. 2008). Showing that a mark is famous is no easy feat. "Nissan Motor Co., 378 F.3d 1002, 1011 (9th Cir. 2004). And courts are clear that this is a "rigorous standard" that is difficult to prove. ArcSoft, Inc. v. CyberLink Corp., 153 F. Supp. 3d 1057, 1065 (N.D. Cal. Dec. 28, 15). Several courts have recently dismissed dilution claims at the pleading stage for failing to allege a plausible claim that the mark was famous. ArcSoft, Inc. v. CyberLink Corp., 153 F. Supp. 3d 1057 (N.D. Cal. Dec. 28, 15). Pinterest, Inc. v. Pintrips, Inc., No. 13-cv-04608-HSG, 2015 WL 6167967, at *21 (N.D. Cal. Oct.21, 2015). In another recent example, the court dismissed a trademark dilution claim against a historic fraternity. See Theta Chi Fraternity, Inc. v. Leland Stanford Junior University, Case No. 16-cv-01336-RMW, 2016 WL 4524305 (N.D. Cal. Aug. 30, 2016). **Evidence against hustlers claims of fame. (See Appx. D14-D18,D28- D33 and D45 ; Exhibit 6,16,17 and 18).** A plaintiff **alleging fame** must establish that its mark is "widely recognized by the general consuming public of the United States." 15

---

**JOINT BRIEF RE: SUMMARY JUDGMENT**

U.S.C. § 1125(c) (2). The Federal Circuit's recent decision in Coach Services, Inc. v. Triumph Learning LLC, 668 F.3d 1356 (Fed. Cir. 2012) ("Fed. Cir. Decision")

**For all of the reasons set above summary judgment should be entered in favor of the defendant, that LFP's hustler marks are NOT famous.**

B. **Plaintiff's Response:**

During the meet and confer process, Plaintiff agreed to dismiss its dilution claim in this action.  Accordingly, Plaintiff's counsel prepared a Stipulation for Dismissal of the Dilution Claim and sent it to Defendant for execution (See Brown Decl. ¶ 12; **Exhibit Z**). Several days later, after transmitting the Stipulation, Defendant refused to sign the stipulation and stated that he was planning to bring a motion based on the "fame" of the HUSTLER® clothing mark.

Plaintiff has not pursued this claim, and requests that the Court dismiss this claim from this action.  Accordingly, Defendant's arguments above should be deemed moot, given that Plaintiff agreed to dismiss the dilution claim many months ago.

V. **Defendant's Motion:  Plaintiff's hustler marks are NOT well-known by the general consuming public of the United States**

A. **Defendant's Argument:**

Defendant Should Be Granted Summary Judgment on its claim that the hustler marks are not well-known by the general consuming public of the United States. Given the conclusive evidence that LFP's hustler marks are not famous. Defendant is also likely to succeed that the hustler marks are not well-known by the general consuming public of the United States. Summary judgment should be entered in favor of the defendant.

The hustler marks are not even well-known, never mind famous. **LFP's Evan Roosevelt even admits that people under 30 aren't familiar with HUSTLER (See Appx. D94; Exhibit's (33 and 39).** "It's Evan Roosevelt's job to **revive the flagging Hustler**" **"I think anyone under 30 isn't really familiar with Hustler"** The TDRA applies only to a mark "widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." The TDRA strengthens incentives for mark-owners to ensure their logos and brand names are well recognized not only among adult consumers, **but also among children.** In this case the plaintiff's hustler marks are NOT well-known by the general consuming public of the United States. <u>Jada Toys, Inc. v. Mattel, Inc., 518 F.3d 628, 634 (9th Cir. 2007).</u> A mark must be "widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c) (2). In 2006, Congress revised the statute to specifically **exclude dilution protection for marks whose**

**fame extends only to niche markets.** "Bd. of Regents, Univ. of Tex. Sys. ex. rel. Univ. of Tex. at Austin v. KST Elec., Ltd., 550 F. Supp. 2d 657, 679 (W.D. Tex. 2008). Section 1125(c) A plaintiff must demonstrate that a mark is a "household name."Nissan Motor Co., 378 F.3d 1002, 1011 (9th Cir. 2004). And courts are clear that this is a "rigorous standard" that is difficult to prove. ArcSoft, Inc. v. CyberLink Corp., 153 F. Supp. 3d 1057, 1065 (N.D. Cal. Dec. 28, 15).

**For all of the reasons set above summary judgment should be entered in favor of the defendant, that LFP's hustler marks are NOT well-known by the general consuming public of the United States.**

**B.  Plaintiff's Response:**

In this instance, Defendant brings a motion seeking to establish an opinion or a disputed fact.   Plaintiff disputes Defendant's position, as there is a long history and many facts that support Plaintiff's contention the HUSTLER® is a well-known mark.  The businesses operated under the HUSTLER® mark are found throughout the United States, and the mark has been used by Plaintiff (and its predecessors-in-interest) for many decades.  Please see Joint Appx. P1 – P26; the Flynt Decl.; the Ryoo Decl. and the many trademark registrations owned by Plaintiff (Plaintiff's **Exhibits A-C; E-G; J**).

---

**VI.**   **Defendant's motion to dismiss, hustler is a generic word.**

**A.**   **Defendant's Argument: Defendant Should Be Granted Summary Judgment on its claim that HUSTLER is a generic word.**

This motion is made on the grounds that the term "Hustler" is not protectable, nor does Plaintiff own the generic term and therefore Plaintiff cannot state a claim for trademark infringement, false designation of origin, trademark dilution and Violation of anticybersquatting. Frustrated by its lack of policing and laches knowing that it cannot assert trademark rights for the term "hustler" Hence the other 22 registered trademarks called hustler or similar. There are over 381 trademarks on the uspto database, registered or applied for with the word hustler,. **(See Appx. D11-D13, D63,D96-D97 ; Exhibit's (3,4,5,6,8,14,15,16,17,18,32 and 41)** ADIDAS® NIKE®AMAZON® SPREADSHIRT® and FASO® all have sold their own clothing with the word hustler on it. The word hustler is synonymous with the pool industry as far back as 1915, is a commonly used word in the music and other industries. The word HUSTLER also relates to the sex industry and someone who sells sex **(See Appx. D95 ; Exhibit's (33,39 and 40). Not secondary meaning** as the plaintiff's claim. The word hustler also has a meaning

of a male prostitute, someone who sells sex, the clear link between what the word and the sex industry and the male prostitute **or hustler** (Larry Flynt) The most common stereotype of the hustler is as a **tragic figure, under-aged** or teen-age **"street kid" or "runaway" forced to leave home because of his sexual orientation or because of sexual abuse. He is often portrayed as a drug addict** or thief. The male prostitute has also been portrayed as an idealized **rebel living outside the law and free of bourgeois conventions.** This almost Nietzschean **image of the hustler as moral and sexual outlaw. Flynt confirms this in interviews. (See Appx. D95 ; Exhibit's (33,39 and 40).** Flynt believes his different attitude to sex was born in those hills. **He ran away at the age of 15.** As a young man, he charged around aimlessly, **"nagged by an inferiority complex", hemorrhaging rage**. . But he can still remember the birth of Hustler. Flynt set up a series of **strip clubs,** where he bragged: **"I'm selling pussy by the glass." He was taking amphetamines the whole time** and was sexually "insatiable, sometimes having **sex with a different woman every four or five hours".** He strived to provoke people into rethinking the puritanical morals associated with sex. **"I have always rebelled against authority"** Flynt **talked openly of massive orgies.** "In a way, I felt like I was on board a pirate ship, like I was in this swashbuckling, **libertarian outlaw crew."** "It was kind of an amazing time to be at Hustler," says MacDonell. "Larry wasn't necessarily talking truth to power, but

---

**JOINT BRIEF RE: SUMMARY JUDGMENT**

**40**

he was talking rage to power." He was an explorer on the outer edges of the First

Amendment, testing just how far free speech protections could be stretched. **The**

**same free speech he is saying he owns,  with the word hustler.** End this lawsuit

and prevent a **trademark bully** like Plaintiff from proceeding any further. Dismiss

on the grounds that the generic term "hustler" is not protectable, nor does Plaintiff

own it.7 Consequently, Plaintiff cannot state a claim for trademark

infringement,false designation of origin, trademark dilution or anticybersquatting

based on defendants' use of this generic term, "Hustler" is not protectable. He

earned his living as a pool hustler. Plaintiff cannot have exclusive rights to the

term.[8]  Moreover, there is  accordingly nothing unlawful defendant's use of the

generic verb hustler for the pool industry. This lawsuit concerns the alleged

unauthorized use of a generic term "hustler" which is purportedly the exclusive

property of Plaintiff for "clothing" Hustler state was registered for clothing 9

years before hustler. Also not required to accept as true allegations that contradict

facts which may be judicially noticed by the court, <u>Warren v. Fox Family</u>

---

[8] The plaintiff is not allowed to own the word hustler The law does not permit a common generic term to be removed from common and pervasive use so that a single company may profit. With this lawsuit, Plaintiff attempts to extend its market power to control the use of a common generic term by asking this Court to issue an order which will effectively appropriate to Plaintiff's exclusive use a common, functional term frequently used by pool players way before LFP went into business, other hustlers in other industries. Plaintiff has no right sent titling it to such relief.

**JOINT BRIEF RE: SUMMARY JUDGMENT**

**41**

Worldwide, Inc.,328 F.3d 1136, 1139 (9ᵗʰ Cir. 2003). A court is plaintiff's

trademark infringement, false designation of origin, trademark dilution and

anticybersquatting should be dismissed because it does not own the word

"HUSTLER" Toho Co., Ltd. v. Sears, Roebuck & Co., 645 F.2d 788, 790-91

(9th Cir. 1981)(affirming dismissal of Lanham Act claim on motion to dismiss

because no likelihood of confusion); CES Publ'g Corp. v. St. Regis Publ'ns, Inc.,

531 F.2d 11, 15 (2d Cir. 1975) (granting motion to dismiss because "Consumer

Electronics Monthly" is not protected mark); Finger Furniture Co., Inc. v.

Mattress Firm, Inc. , 2005 WL 1606934, *2-3 (S.D. Tex. 2005) (dismissing

because mark at issue was not protectable). Plaintiff does not own the word

hustler, as a matter of law, it is irrelevant how much money Plaintiff has spent on

promotion, no amount of advertising, can convert the generic term into a

trademark. See Perini Corp. v. Perini Constr., 915 F.2d 121, 127(4ᵗʰ Cir. 1990);

Sara Lee Corp. v. Kayser-Roth Corp., 81 F.3d 455, 464 (4th Cir. 1996); Miller

Brewing Co. v. G. Heileman Brewing Co., 561 F.2d 75, 79 (7th Cir. 1977);see also

Miller Brewing Co. v. Falstaff Brewing Corp., 655 F.2d 5, 8 (1st Cir. 1981) Even

if some consumers may happen to associate a generic term with a specific

company(which consumers don't) this merely establishes "de facto secondary

meaning," which is irrelevant to a trademark analysis: A showing of "secondary

meaning," no matter how strong, can never earn trademark status for a generic

word. This fact that has led to the phrase "de facto secondary

meaning."; Am.Online Inc. v. AT&T Corp., 64 F. Supp. 2d 549, 557 (E.D. Va.

1999) aff'd in part, vacated in part, 243 F.3d 812 (4th Cir. 2001); Cont'l Airlines,

Inc.v. United Air Lines, Inc., 53 U.S.P.Q.2d1385 (TTAB 1999).Stulbarg Int'l

Sales Co. v. Brush & Co., 240 F.3d 832, 840 (9th Cir.2001) (The word Hustler is

nothing more than a generic noun/verb which is not entitled to protection. See,

Miller Brewing Co.,561 F.2d at 80 (the adjective "light" is a generic term). Just as

one producer may not use unfair competition law to prevent others A.J. Canfield

Co. v.Honickman, 808 F.2d 291, 307 (3d Cir.1986); see also Am. Online, Inc. v.

AT&T Corp., 243 F.3d 812, 820-23 (4th Cir. 2001) Plaintiff cannot pluck the word

"hustler" from the public domain and preclude others from using that verb. Miller

Brewing Co., 561 F.2d at 80; A.J. Canfield, 808 F.2d at 307; Am. Online, 243 F.3d

at 820. Consequently, Plaintiff cannot state a claim based on defendant's use of the

term hustler. Ordinary, everyday expressions are repeatedly denied trademark

status. See Reed v. Amoco Oil Co., 611 F. Supp. 9, 12 (M.D. Tenn. 1984)

Leadsinger, Inc. v. BMG Music Publ'g, 512 F.3d 522, 532 (9thCir. 2008) see also

Chem. v. New York Life Ins. Co., 168 F.3d 498 (9th Cir. 1999) In re All Terrain

Vehicle Litig., 771 F. Supp. 1057, 1062 (C.D. Cal. 1991)

**For all of the reasons set above, the defendant respectfully requests that this**

**Court dismiss in favor of the defendant.**

**JOINT BRIEF RE: SUMMARY JUDGMENT**

**43**

**B. Plaintiff's Argument in Response to Defendant's Motion to Dismiss:**

   **A.  The HUSTLER® Mark is Not Generic.**

Defendant misconstrues the meaning of "generic" and does not appreciate that the HUSTLER® registration for apparel items, and other HUSTLER® registrations, are deemed incontestable under the Lanham Act.  As stated previously, the effect of incontestable status under the Lanham Act is that the registration goes beyond prima facie evidence to become "conclusive evidence" of the ownership, validity, and exclusive right to use the mark. See, 15 U.S.C. §1115(b).  However, without pleading this claim or defense in his Answer, Defendant now seeks to attack the validity of the HUSTLER® mark without a proper basis whatsoever.

In the context of the sale of apparel items, the HUSTLER® mark is arbitrary, making the mark a strong mark when considering the spectrum of marks.  As stated in the Manual of Model Civil Jury Instructions, for the District Courts of the Ninth Circuit, 2007 Edition ("Jury Instructions"), such marks "involve the arbitrary, fanciful or fictitious use of a word to designate the source of a [product]." (p. 307).  On the other hand, a generic mark refers to a general name of a particular product. For example, "[t]he word 'apple' can be used as a generic name and not be entitled

to any trademark protection.  This occurs when the word is used to identify the fruit from an apple tree… [a]s applied to the fruit, 'apple' is simply a commonly used name for what is being sold" (Jury Instructions, p. 309).  Here, in the context of clothing items, HUSTLER® is a brand and not a generic, general name for a type of apparel.

**B. Defendant Has Not Pled his Claim that the Subject Mark is Generic; this Issue Should Not be Heard.**

Defendant Brett attempts to raise, for the first time on the present motion for summary judgment, the assertion that the HUSTLER® mark is a generic mark and is not entitled to protection.  This late-in-the-game argument must be rejected by the Court.  Defendant Brett failed to raise the issue of a "generic mark" anywhere in the previous pleadings herein.  Accordingly, Defendant Brett cannot raise a new issue for the first time as either a basis for granting or denying a motion for summary judgment (or a "Motion to Dismiss" as Defendant characterizes it).  The case law clearly establishes that such action is improper

whether Defendant Brett bears the burden of proof as to a counterclaim or an affirmative defense.

Rule 8 of the Federal Rules of Civil Procedure states that "[a] pleading that states a claim for relief must contain: …a short and plain statement of the claim showing that the pleader is entitled to relief…" Similarly, concerning defenses, Rule 8 also states "[i]n responding to a pleading, a party must: …state in short and plain terms its defenses to each claim asserted against it" and "[i]n responding to a pleading, a party must affirmatively state any avoidance or affirmative defense…" or it is waived. *See In re Adbox, Inc.*, 488 F.3d 836, 841 (9th Cir. 2007). Federal Rule of Civil Procedure Rule 8(a)(2) requires that the allegations in the complaint give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. *Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 968 (9th Cir. 2006). A party has not provided fair notice of his claim when he brings new allegations for the first time in opposition to a motion for summary judgment. *See Id.*, at 969.

The court should not consider claims raised for the first time at summary judgment which the party did not raise in their pleadings. *See Coleman v. Quaker Oats Co.*, 223 F.3d 1271, 1292 (9th Cir. 2000) ("A complaint guides the parties' discovery, putting the defendant on notice of the evidence it needs to adduce in

order to defend against the plaintiff's allegations."); *see also Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 968 (9th Cir. 2006) (noting that plaintiff could not raise new factual allegations at summary judgment because allegations not included in the complaint failed to "give the defendant fair notice of what the plaintiff's claim [were] and the grounds upon which [they] rest[ed]," as required by Rule 8(a)(2) of the Federal Rules of Civil Procedure).

Allowing a party to seek summary judgment on an unpled claim would be unfair. *See Bullard v. Wastequip Mfg. Co. LLC*, 2015 U.S. Dist. LEXIS 186456 (C.D.Cal. Apr. 14, 2015). A party may not circumvent Rule 8's pleading requirements by asserting a new allegation in response to a motion for summary judgment. *Id*. When "the complaint does not include the necessary factual allegations to state a claim, raising such claim in a summary judgment motion is insufficient to present the claim to the district court." *Navajo Nation v. U.S. Forest Service*, 535 F.3d 1058, 1080 (9th Cir. 2008); *see, e.g., Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) ("Simply put, summary judgment is not a procedural second chance to flesh out inadequate pleadings."); *Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 968-69 (9th Cir. 2006) (complaint failed to satisfy F.R.Civ.P. 8(a) because it "gave the [defendants] no notice of the specific factual allegations presented for the first time in [the plaintiff's] opposition to summary judgment").

**JOINT BRIEF RE: SUMMARY JUDGMENT**

Here, as the party bearing the burden of proof on his claim alleging HUSTLER® is a generic mark, Defendant Brett was required to plead his claim, supported by sufficient allegations, to give Plaintiff fair notice of the bases of his counterclaim. Defendant Brett's Answer contained no factual allegations concerning Hustler as a generic mark. Plaintiff first learned of this allegation as a grounds for Defendant Brett's during the process of preparing this Joint Motion for Summary Judgment. Defendants waive their defenses when their Answer is insufficient to put plaintiffs on notice of the particular defense and the lack of notice results in an inability to conduct discovery on the issue by plaintiffs. *Lopez v. G.A.T. Airline Ground Support, Inc.*, 2010 U.S. Dist. LEXIS 73029 (S.D. Cal. Jul. 19, 2010).

Further, when a party seeks to raise an affirmative defense after the scheduling order's cutoff for amended pleadings, the party must meet not just the liberal standard for amended pleadings in Federal Rule of Civil Procedure 15(a), but the stricter "good cause" standard under Federal Rule of Civil Procedure 16(b). See *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 952 (9th Cir. 2006). Unlike Rule 15(a)'s liberal amendment policy, which focuses on undue delay and prejudice to the other party, Rule 16(b)'s "good cause" standard centers on the moving party's diligence. *Johnson*, 975 F.2d at 609.

**JOINT BRIEF RE: SUMMARY JUDGMENT**

**48**

Here, there is clearly prejudice to Plaintiff in having to face, for the first time, on summary judgment Defendant Brett's defense based upon the allegation that HUSTLER® is a generic mark and is not entitled to protection.  This claim was not found in Defendant Brett's prior pleadings, and Plaintiff has not had an opportunity to elicit discovery from Defendant Brett on the issue.  Similarly, even if Defendant Brett were to seek to amend his pleadings to include this defense or claim, he fails to meet the necessary standard permitting him to do so.  Even were this Court to find "good cause" under Rule 16 permitting an amendment, Rule 15 still bars amendment given the aforementioned prejudice to Plaintiff through lack of notice of the defense and inability to conduct discovery on the issue.

Dated: April 20, 2017              MARK S. HOFFMAN, A
                                   PROFESSIONAL CORPORATION

                                   LIPSITZ GREEN SCIME CAMBRIA LLP


                                   By: /s/ Jonathan W. Brown
                                       Jonathan W. Brown, Esq.
                                       Attorneys for Plaintiff LFP IP, LLC

Dated:  April 20, 2017


                                   By: /s/ Lee Keith Brett
                                       Lee Keith Brett
                                       Pro Se Defendant

---

**JOINT BRIEF RE: SUMMARY JUDGMENT**

**49**