Jason D. Strabo (SBN 246426)
jstrabo@mwe.com
Jessica A. Mariani (SBN 280748)
jmariani@mwe.com
McDERMOTT WILL & EMERY LLP
2049 Century Park East, Suite 3800
Los Angeles, CA  90067-3218
Telephone:   (310) 277 4110
Facsimile:    (310) 277 4730

Jodi L. Benassi (SBN 309048)
jbenassi@mwe.com
McDERMOTT WILL & EMERY LLP
275 Middlefield Rd, Suite 100
Menlo Park, CA  94025
Telephone:  650-815-7400
Facsimile:   650-815-7401

Attorneys for Defendant
Lee Keith Brett

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LFP IP, LLC,<br><br>             Plaintiff,<br><br>   v.<br><br>LEE KEITH BRETT,<br><br>             Defendant. | CASE NO.  2:16-cv-00166<br><br>Hon. Frederick F. Mumm<br><br>**DEFENDANT LEE KEITH BRETT'S AMENDED MEMORANDUM OF CONTENTIONS OF FACT AND LAW PURSUANT TO CIVIL LOCAL RULE 16-4**<br><br>Pretrial Conference: September 12, 2018<br><br>First Day of Trial:  October 2, 2018 |

## TABLE OF CONTENTS

| | | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | PLAINTIFF'S CLAIMS | 2 |
| | A. Summary of LFP's Claims | 2 |
| | B. Elements Required to Establish LFP's Claims | 3 |
| |     1. Trademark Infringement | 3 |
| |     2. False Designation of Origin | 3 |
| | C. Brief Description of Key Evidence in Opposition to Each of LFP's Claims | 4 |
| |     1. Evidence In Opposition To LFP's Trademark Infringement Claim | 4 |
| |     2. Evidence In Opposition To LFP's False Designation of Origin Claim | 5 |
| III. | DEFENDANT'S AFFIRMATIVE DEFENSES | 5 |
| | A. Affirmative Defenses Waived for Trial | 5 |
| IV. | DEFENDANT'S COUNTERCLAIMS | 5 |
| | A. Waived Counterclaims | 5 |
| V. | IDENTIFICATION OF ANY EVIDENTIARY ISSUES | 5 |
| VI. | ISSUES OF LAW | 6 |
| | A. There Is No Likelihood of Confusion | 6 |
| | B. The Hustler Trademarks Are Not Commercially Strong | 6 |
| | C. The T-Shirts Are Distinguishable Such That Reasonable Consumers Are Not Confused | 7 |
| | D. The Marks Are Not Similar | 8 |
| | E. There is No Evidence of Actual Confusion | 8 |
| | F. The Marketing Channels Are Sufficiently Different | 9 |
| | G. The Degree Of Care Exercised By the Consumer | 10 |
| | H. Mr. Brett's Intent in Selecting the Mark | 10 |
| VII. | TRIAL | 10 |

**Cases**

*AMF Inc. v. Sleekcraft Boats*
  599 F.2d 341 (9th Cir. 1979) ......................................................................... 6, 9

*Automotive Gold Inc. v. Volkswagen of Am., Inc.*
  457 F.3d 1062 (9th Cir. 2006) ............................................................................ 7

*Brookfield Comm. Inc. v. W. Coast Ent. Corp.*
  174 F.3d 1036 (9th Cir. 1999) ............................................................................ 7

*Entrepreneur Media, Inc. v. Smith*
  279 F.3d 1135 (9th Cir. 2002) ......................................................................... 7, 8

*Equinox Hotel Mgmt, Inc. v. Equinox Holdings, Inc.*
  No. 17-CV-06393-YGR, 2018 WL 659105 (N.D. Cal. Feb. 1, 2018) ................. 9

*M2 Software, Inc. v. Madacy Ent.*
  421 F.3d 1073 (9th Cir. 2005) ......................................................................... 7, 8

*Mach. Head v. Dewey Glob. Holdings Inc.*
  No. C 99-04326 CW, 2001 WL 1747180 (N.D. Cal. Dec. 13, 2001) ................. 9

*Mattel, Inc. v. Walking Mountain Prod.*
  353 F.3d 792 (9th Cir. 2003) ............................................................................. 6

*Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*
  638 F.3d 1137 (9th Cir. 2011) ...................................................................... 7, 9, 10

*New Milani Grp., Inc. v. J.T. Bella, LLC*
  No. CV 12-10612, 2013 WL 12116579 (C.D. Cal. July 22, 2013) .................... 9

*Newcal Indus., Inc. v. Ikon Office Solution*
  513 F.3d 1038 (9th Cir. 2008) ............................................................................ 3

*Official Airline Guides, Inc. v. Goss*
  6 F.3d 1385 (9th Cir. 1993) ............................................................................... 7

*Playboy Enterprises, Inc. v. Netscape Communications Corp.*
  354 F.3d 1020 (9th Cir. 2004) ............................................................................ 9

*Rearden LLC v. Rearden Com., Inc.*
  683 F.3d 1190 (9th Cir. 2012) ............................................................................ 6

*SG Servs. Inc. v. God's Girls Inc.*
  No. CV 06-989 AHM, 2007 WL 2315437 (C.D. Cal. May 9, 2007) ................. 8

*Sleeper Lounge Co. v. Bell Mfg. Co.*
  253 F.2d 720 (9th Cir. 1958) .............................................................................. 8

*Southland Sod Farms v. Stover Seed Co.*
  108 F.3d 1134 (9th Cir. 1997) ............................................................................ 3

*Stonefire Grill, Inc. v. FGF Brands, Inc.*
  987 F.Supp.2d 1023 (C.D. Cal. 2013) ................................................................ 8

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

**Statutes**

15 U.S.C. § 1125(a)(1)(B) ...................................................................................................4

**Other Authorities**

Anne Gilson LaLonde
    Gilson on Trademarks § 5.05[2] (2017)......................................................................8

Ninth Circuit Manual of Model Jury Instructions
    Civil §§ 15.13, 15.16...................................................................................................4

Pursuant to Local Rule 16-4, Defendant Lee Keith Brett ("Defendant" or "Mr. Brett") respectfully submits this Memorandum of Contentions of Fact and Law.

## I. INTRODUCTION

Plaintiff LFP IP, LLC ("Plaintiff" or "LFP") has accused Mr. Brett of infringing two federally registered trademarks "Hustler" and "Hustler Hollywood" ("the Hustler trademarks"). Mr. Brett has been a professional pool player and instructor for over twenty years. Mr. Brett has been coaching in the American Pool Players Association ("APA"), the world's largest pool league, for the past three years. He has coached many world champions including the Hong Kong national team.

In 2012, Mr. Brett suffered injuries from a car accident that prevented him from playing and coaching pool. In 2014, Mr. Brett recovered from his injuries and received $32,000 as part of a settlement from the car accident. That year, Mr. Brett launched a line of t-shirts, polo shirts, and hats with his partner, targeted specifically for the pool industry. Mr. Brett started his new company using the brand name "American Hustler," with a logo including a red star and distinctive font. Mr. Brett specifically chose the name American Hustler because his clothing line was made in America and the term "hustler" has long been used in the billiard industry. With respect to the details of Mr. Brett's trademark, he selected the star iconography in his logo to represent his position in the pool industry, chose the color red because it represents his favorite football team, and employed a font uniquely different from the font used by Plaintiff. Furthermore, Mr. Brett has consistently marketed his products specifically to the pool industry and pool enthusiasts. At no time did Mr. Brett intend to deceive the average consumer into believing that his t-shirts were in any way affiliated with the Hustler trademarks.

The use of the word "hustler" in popular culture in connection with the sport of pool dates back to at least 1959, as evidenced by its use in the book "The

Hustler" by Walter Tevis. Pool hustling has been the subject of films such as "The Hustler" (1961) and The Color of Money (1986). Hustling has been written about extensively in books such as "A Billiard Hustler's Life" (1984) by Danny McGoorty; "A Pool Room Hustler" (2004) by Robert Byrne; "Playing off the Rail: A Pool Hustler's Journey" by David McCumber; "Hustler Days: Minnesota Fats, Wimpy Lassiter, Jersey Red, and America's Great Age of Pool (2003) by R.A. Dyer; and Confessions of a Pool Hustler (2010) by Robert LeBlanc. Moreover, "hustler" is used by many songwriters in songs such as, "Hustler's Ambition" by 50 cent; "U Don't Know" by Jay-Z; and "Hustler Musik" by Lil Wayne. In addition to its use in connection with pool, the word "hustler" is often used in popular culture to refer to someone who is entrepreneurial, works hard, and perhaps makes deals to get ahead in life, which is entirely distinct from the sexual connotation of the Hustler trademarks.

It is therefore unsurprising that the United States Patent and Trademark Office ("PTO") has registered the word "hustler" and derivatives of it for over forty trademarks outside of the Hustler trademarks. For example, "Baltimore Hustlers," reg. no. 3716459; "Charlotte is for Hustlers," reg. no. 5198649; "Chi-Town Hustlers," reg. no. 3148306; "Cigar Hustler," reg. no. 4337913; "Flextone Game Calls Hustler," reg. no. 4059217; and "Hustler State," reg. no. 1934785.

What is disputed here is whether Mr. Brett's trademark has infringed the Hustler trademarks and if Mr. Brett is liable for false designation of origin under 15 U.S.C. § 1125(a). Under these facts, and as will be more fully demonstrated at trial, it is clear LFP cannot prove the essential elements of its claims.

## II. PLAINTIFF'S CLAIMS

### A. SUMMARY OF LFP'S CLAIMS

LFP has stated that it intends to pursue each of the following pleaded claims:

Claim 1: Trademark Infringement: LFP alleges that Mr. Brett has directly infringed its trademark in violation of 15 U.S.C. § 1114(a).

Claim 2: False Designation or Origin: LFP IP alleges that Mr. Brett violated the Lanham Act, 15 U.S.C. § 1125(a).

### B. ELEMENTS REQUIRED TO ESTABLISH LFP'S CLAIMS

#### 1. Trademark Infringement

To succeed on its claim for trademark infringement, LFP must prove:

(a) The Hustler trademarks are valid and protectable;

(b) LFP owns the Hustler trademarks; and

(c) Mr. Brett used a mark similar to at least one of the Hustler trademarks, without the consent of the Plaintiff in a manner that is likely to cause confusion among ordinary consumers as the source, sponsorship, affiliation, or approval of the goods.[1]

#### 2. False Designation of Origin

To succeed on its claim for false designation of origin, LFP must prove:

(a) Mr. Brett made a false or misleading statement about his own product or another's product in commercial advertising;

(b) the deception is material, in that it is likely to influence the purchasing decision;

(c) Mr. Brett caused his false or misleading statement to enter interstate commerce; and

(d) LFP has been or is likely to be injured as a result of the false or misleading statement, either by direct diversion of sales from itself to Mr. Brett or by a lessening of the goodwill associated with its products.[2]

---

[1] *See* Ninth Circuit Manual of Model Jury Instructions – Civil §§ 15.13, 15.16.

[2] *See Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997); *Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1054 (9th Cir. 2008); *see also* 15 U.S.C. § 1125(a)(1)(B).

### C. BRIEF DESCRIPTION OF KEY EVIDENCE IN OPPOSITION TO EACH OF LFP'S CLAIMS

There is no evidence to support a claim of trademark infringement or a false designation of origin against Mr. Brett. All of LFP's causes of action are based on the same facts and advertisements, and as such, the evidence in opposition to each cause of action is substantially similar, if not the same.[3]

LFP has sued Mr. Brett because Mr. Brett launched a line of t-shirts, polo shirts, and hats, and a website under the name American Hustler. Plaintiff is unable to prove by a preponderance of the evidence that Mr. Brett's use of American Hustler is likely to cause confusion amount ordinary consumers as to the source, sponsorship, affiliation, or approval of the goods.

#### 1. Evidence In Opposition To LFP's Trademark Infringement Claim

Mr. Brett intends to use examples of American Hustler t-shirts, photographs of American Hustler Designs; screenshots from Mr. Brett's website American Hustler and related Facebook page; articles about Mr. Brett; screenshots of Plaintiff's website Hustler Hollywood; books and movies using the word "hustler" in connection with the sport of pool; definitions of the word "hustler" and "hustling;" lyrics to popular songs using the words "hustle," "hustler," and "hustling;" screenshots of Plaintiff's t-shirt designs, screenshots from other websites using the word "hustler;" screenshots of other t-shirts using the word "hustler" and "1974;" testimony from witnesses, and facts already submitted to the Court to demonstrate that LFP cannot prove its claims.

---

[3] While there is substantial overlap between the evidence in opposition to the claim for trademark infringement and the claim for false designation of origin, Mr. Brett lists the evidence for each claim separately in order to comply with L.R. 16-4.1.

### 2. Evidence In Opposition To LFP's False Designation of Origin Claim

Mr. Brett intends to use examples of American Hustler t-shirts, photographs of American Hustler Designs and related Facebook page; screenshots from Mr. Brett's website American Hustler; articles about Mr. Brett; screenshots of Plaintiff's website Hustler Hollywood; books and movies using the word "hustler" in connection with the sport of pool; definitions of the word "hustler" and "hustling;" lyrics to popular songs using the words "hustle," "hustler," and "hustling;" screenshots of Plaintiff's t-shirt designs, screenshots from other websites using the word "hustler;" screenshots of other t-shirts using the word "hustler" and "1974;" testimony from witnesses, and facts already submitted to the Court to demonstrate that LFP cannot prove its claims.

## III. DEFENDANT'S AFFIRMATIVE DEFENSES

### A. AFFIRMATIVE DEFENSES WAIVED FOR TRIAL

Pursuant to the meet and confer process with LFP's counsel, and based in particular on LFP's counsel's representations that it will not pursue a claim for damages, and has withdrawn and will not pursue its Third and Fourth Claims asserted in the Complaint, Mr. Brett will not pursue at trial the following defenses previously asserted in Mr. Brett's answer, affirmative defenses and counterclaims (ECF No. 23 at p.4) are withdrawn: 1) estoppel; 2) license; 3) laches; 4) waiver; 5) failure to state a claim; 6) mitigation of damages.

## IV. DEFENDANT'S COUNTERCLAIMS

### A. WAIVED COUNTERCLAIMS

On August 3, Mr. Brett withdrew two counterclaims asserted in the Answer. *See* ECF No. 30.

## V. IDENTIFICATION OF ANY EVIDENTIARY ISSUES

On June 16, 2017, the parties filed a joint pretrial exhibit stipulation with their separate proposals. On June 6, 2018, counsel for Mr. Brett appeared in this

1  case and, since then, has been reviewing the evidence and exhibits. On August 15,
2  2018, counsel for both parties met and conferred regarding the evidence and
3  exhibits and agreed to work together to file the pre-trial stipulation on or before
4  September 25, 2018. There are no known evidentiary issues at this time.

## VI. ISSUES OF LAW

### A. THERE IS NO LIKELIHOOD OF CONFUSION

LFP cannot prove the requisite likelihood of confusion. The likelihood of confusion inquiry asks "whether a reasonably prudent consumer in the marketplace is likely to be confused as to the origin or source of the goods or services bearing" the mark at issue. *Rearden LLC v. Rearden Com., Inc*., 683 F.3d 1190, 1202–03 (9th Cir. 2012). "[P]laintiff must show more than simply a possibility of such confusion." *Id*. The Ninth Circuit applies a flexible eight-factor test in determining the likelihood of confusion, which looks to the:

1) Strength of the mark;
2) Proximity of the goods;
3) Similarity of the marks;
4) Evidence of actual confusion;
5) Marketing channels used;
6) Type of goods and the degree of care likely to be exercised by the purchaser;
7) Defendant's intent in selecting the mark; and
8) Likelihood of expansion of the product lines.

*Id*. (citing *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979), abrogated on other grounds by *Mattel, Inc. v. Walking Mountain Prod.*, 353 F.3d 792, 800 n.19 (9th Cir. 2003)).

### B. THE HUSTLER TRADEMARKS ARE NOT COMMERCIALLY STRONG

Courts consider the commercial strength of an allegedly infringed mark, looking to actual marketplace recognition. *Network Automation, Inc. v. Advanced*

*Sys. Concepts, Inc*., 638 F.3d 1137, 1149 (9th Cir. 2011) (citing *Brookfield Comm. Inc. v. W. Coast Ent. Corp*., 174 F.3d 1036, 1058 (9th Cir. 1999)). "Use of similar marks by third-party companies in the relevant industry weakens the mark at issue." *M2 Software, Inc. v. Madacy Ent*., 421 F.3d 1073, 1088 (9th Cir. 2005) (citations omitted). A mark being incontestable "does not require a finding that the mark is strong." *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1142 n.3 (9th Cir. 2002). The Hustler trademarks are not strong, given among other things, the volume of "hustler" variants in competing commercial uses and/or registered by the USPTO, the number of references to "hustler" or variants of the word in popular culture, and the widespread use of "hustler" in the pool industry.

### C. THE T-SHIRTS ARE DISTINGUISHABLE SUCH THAT REASONABLE CONSUMERS ARE NOT CONFUSED

The relevant question is whether a reasonable consumer would believe that related but noncompeting goods sold under similar trademarks come from the same source. *Automotive Gold Inc. v. Volkswagen of Am., Inc*., 457 F.3d 1062 (9th Cir. 2006). When the goods are more closely related, the marks at issue can be less similar to satisfy the proximity factor, because related goods are more likely to confuse the public; a "diminished standard of similarity" is applied when comparing marks of closely related goods. Anne Gilson LaLonde, Gilson on Trademarks § 5.05[2] (2017); *see also Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385 (9th Cir. 1993)). Goods are proximate if they are similar in use and function and would be reasonably thought by the buying public to come from the same source if sold under the same mark. Among other things, Mr. Brett's goods are marketed specifically to the pool industry, and commonly contain distinctive and different markings and iconography. There is no likelihood the public will be confused by Mr. Brett's high-quality, American made shirts focused on the sport of pool versus the sex-related t-shirts sold by LFP.

### D. THE MARKS ARE NOT SIMILAR

LFP has argued that adding "American" does not diminish the likelihood of confusion, but on at least once occasion, the Ninth Circuit has opined that the addition of another multisyllabic word could allow a reasonable juror to find one mark dissimilar from another. *See Entrepreneur Media*, 279 F.3d at 1145 (citation omitted). Despite LFP's erroneous contention that Mr. Brett having disclaimed "American" on his trademark application means it should have no weight in the analysis, the Ninth Circuit has explicitly held otherwise. *See Sleeper Lounge Co. v. Bell Mfg. Co*., 253 F.2d 720, 722 n.1 (9th Cir. 1958).

Further, the presence of a common word does not render two marks similar where additional words make the mark distinctive. *Stonefire Grill, Inc. v. FGF Brands, Inc*., 987 F.Supp.2d 1023, 1052 (C.D. Cal. 2013). "American" is certainly multisyllabic and impacts the more significant verbal portion of the mark, while the addition of the star in Mr. Brett's logo provides further visual uniqueness. *See id*. at 1052 (finding that Defendant's mark having additional words and a graphic of orange fire, where Plaintiff's mark bore no design or graphic, made the marks visually dissimilar); *see also SG Servs. Inc. v. God's Girls Inc*., No. CV 06-989 AHM, 2007 WL 2315437, at *5 (C.D. Cal. May 9, 2007) ( The mere fact that both marks contain the word "girls" does not create a likelihood of confusion because the prefatory words—"Suicide" and "God's"—have very distinct sounds and meanings.). Here, Mr. Brett's trademark not only includes the prefatory word, "American," it also uses the star iconography, commonly employs different and distinctive fonts and other presentation, and routinely includes language associating the use with the pool industry—making it prominently dissimilar. These differences weigh against a finding of confusion.

### E. THERE IS NO EVIDENCE OF ACTUAL CONFUSION

"Evidence that use of the two marks has already led to confusion is persuasive proof that future confusion is likely." *M2 Software*, 421 F.3d at 1082

1  (citing *Sleekcraft*, 599 F.2d at 352). LFP cannot provide any evidence of actual
2  confusion, therefore this factor weighs in Mr. Brett's favor.

### F. THE MARKETING CHANNELS ARE SUFFICIENTLY DIFFERENT

The Ninth Circuit has found this factor has become less important when the marketing channel is less obscure. *Network Automation*, 638 F.3d at 1151. Today, it would be the rare commercial retailer that did not advertise online, and the shared use of a ubiquitous marketing channel **does not shed much light** on the likelihood of consumer confusion. *Id.* (emphasis added). *See Playboy Enterprises, Inc. v. Netscape Communications Corp*, 354 F.3d 1020, 1028 (9th Cir. 2004) ("Given the **broad use of the Internet** today, the same could be said for countless companies. Thus, this factor merits little weight.").

Mr. Brett also markets his products at pool industry shows and rooms (ECF No. 43), and LFP has presented no evidence that it does so. Where parties share "only general internet channels," as opposed to being sold in the same types of stores, this factor militates against the party alleging infringement. *See New Milani Grp., Inc. v. J.T. Bella, LLC*, No. CV 12-10612, 2013 WL 12116579 (C.D. Cal. July 22, 2013). Moreover, Mr. Brett markets specifically to pool players, while LFP's products have no apparent quality that would give them any affinity with pool players. *See Equinox Hotel Mgmt, Inc. v. Equinox Holdings, Inc.*, 17-CV-06393-YGR, 2018 WL 659105, at *8 (N.D. Cal. Feb. 1, 2018) (finding the marketing channels factor weighed in favor of defendant where the parties market to different types of customers) (citing *Mach. Head v. Dewey Glob. Holdings Inc.*, No. C 99-04326 CW, 2001 WL 1747180, at *9 (N.D. Cal. Dec. 13, 2001)). The minimal weight of sharing the internet as a marketing channel, Mr. Brett's use of a channel that LFP does not use, and Mr. Brett's choice to market to a different set of customers than LFP likely points to this factor weighing in favor of Mr. Brett.

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

### G. THE DEGREE OF CARE EXERCISED BY THE CONSUMER

The default degree of consumer care is becoming more heightened as the novelty of the Internet evaporates and online commerce becomes commonplace. *Network Automation, Inc.*, 638 F.3d at 1152. Among other things, Mr. Brett's marketing routinely refers to the sport of pool and commonly makes the association with pool clear on its face. Mr. Brett's website also clearly shows the "American Hustler" trademark affiliation with Mr. Brett. Mr. Brett's website clearly states, "We decided to start American Hustler **so players** can wear stylish apparel, in and out, of the **pool hall**. With premium products we only supply the best **to help your game** improve."

A reasonably prudent consumer would not be confused into believing that Mr. Brett's t-shirts, which are focused on the sport of pool, have a formal affiliation with the maker of sex-related goods.

### H. MR. BRETT'S INTENT IN SELECTING THE MARK

"[M]uch like the proximity of the goods, the defendant's intent may be relevant here, but only insofar as it bolsters a finding that the use of the trademark serves to mislead consumers rather than truthfully inform them of their choice of products." *Network Automation,* 638 F.3d at 1153. Contrary to LFP's allegations, Mr. Brett has not designed his t-shirts to confuse the public. *See* supra, Section I.

## VII. TRIAL

Mr. Brett and LFP have each timely requested jury trials in their pleadings, and in the Rule 26 Case Management Report. Pursuant to a meet and confer that took place on August 15, 2018, the parties agreed to a bench trial.

Dated: August 22, 2018

Respectfully submitted,

MCDERMOTT WILL & EMERY LLP

By: */s/* Jason D. Strabo
Jason D. Strabo
Attorneys for Defendant Lee Keith Brett